38525. GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORPORATION *et al.* v. AZAR, *et al.*

DECIDED FEBRUARY 8, 1961—REHEARING DENIED
MARCH 2, 1961.

*Dudley Cook*, for plaintiffs in 'error.

*Moise, Post & Gardner, Albert G. Norman, Jr.*, contra.

BELL, Judge. ■ The first contention of the insurers, as raised by both the general grounds and special ground 5, is that the claimants' evidence utterly failed to establish that the damage was caused by malicious mischief and vandalism as defined in the insurance policy and by windstorm, all as alleged in the petitions. It appears that there is no serious contention that

the damage was caused by windstorm, but rather that the damage was caused by malicious mischief and vandalism as defined in the policy. A search of the cases indicates that as applied to insurance policy coverage, the term, "vandalism and malicious mischief," has not been defined by the appellate courts in this State. In fact, there have been surprisingly few cases in the United States interpreting or defining this phrase.

The insurance policies sued upon contain identical definitions of the term as follows: "Vandalism and Malicious Mischief: Applies only in consideration of additional premium shown on the first page of this policy and only when extended coverage is also made effective - 1. In consideration of vandalism and malicious mischief premium shown on the first page of this policy and subject to: (a) the provisions of this policy of fire insurance; (b) the extended coverage provisions and; (c) those of the vandalism and malicious mischief (hereinafter referred to as 'provisions'); the coverage under said extended coverage is hereby extended to include direct loss to the described property from vandalism and malicious mischief. 2. The term 'Vandalism and malicious mischief' as used herein is restricted to and includes only wilful or malicious physical injury to or destruction of the described property. 3. When this policy covers direct loss to the described property, this company shall not be liable under these provisions for any loss (a) to glass (other than glass building blocks) constituting a part of the building; (b) by pilferage, theft, burglary or larceny, except loss by wilful or malicious physical injury to or destruction of a building described and covered hereunder; (c) by explosion, rupture or bursting of (1) steam boilers, steam pipes, steam turbines, steam engines; or (2) rotating parts of machinery caused by centrifugal force; if owned by, leased by or actually operated under the control of the insured; (d) from depreciation, delay, deterioration or loss of market; nor unless specifically endorsed hereon in writing for any loss resulting from change in temperature or humidity."

The historical definition of vandalism was derived from the destruction of many monuments of art and literature by the Vandals, who, in the fourth and fifth centuries, overran Gaul, Spain, and northern Africa, and, in 455 A. D., entered Italy and

sacked Rome. Webster's New International Dictionary, 1951 edition. It originally meant the barbaric and reckless destroying or spoiling of something venerable, artistic, or beautiful. However, in ordinary usage the word is not limited to destruction of works of art, but has been broadened in its meaning to include the destruction of property generally. 91 C. J. S., Vandalism, p. 802. Certainly it does not seem logical that the classic definition was intended by either the insurer or the insured in this case, for it is obvious that vandalism and malicious mischief insurance coverage on a warehouse for the storage of tobacco and miscellaneous sundries did not contemplate protecting works of art and historical monuments. The few cases which have interpreted insurance terms of this type have held similarly. Thus, "We do not feel that we should here construe the word 'vandalism' in its narrowest sense, but hold that the proper construction should be such as is considered in the popular mind." Great American Ins. Co. v. Dedmon, 260 Ala. 330 (70 So. 2d 421, 43 A. L. R. 2d 599). The term "malicious mischief" includes wilful physical injury to or destruction of property in general, real or personal, from ill will or resentment towards the owner or possessor. 54 C. J. S., Malicious Mischief §§ 1, 3. Most of the cases which have interpreted this term arose out of criminal prosecutions. However, the acts of defaulting purchasers in wilfully and systematically destroying and removing fixtures from buildings, breaking windows and frames, done in reckless disregard of the vendor's rights and with deliberate intent to injure the vendor and avenge the purchaser's ejectment, were held to constitute malicious mischief within a policy insuring property against vandalism and malicious mischief. Romanych v. Liverpool & London & Globe Ins. Co., 167 N. Y. S. 2d 398, 402 (8 Misc. 2d 269). That acts of mischievous children may be vandalism, see Liberman v. American Lumbermans Mut. Cas. Co., 120 N. Y. S. 2d 43 (203 Misc. 816).

In the present case the evidence, concisely stated, was that people were heard walking on the roof of the warehouse and banging noises were heard, whereupon the proprietor sent his janitor up to see what the commotion was. The janitor testified that the day before the leaks appeared in the ceiling he had run four or five children off the roof, that they were throwing rocks

and running over the building, and that some of the rocks were as big as half a brick. The janitor then went on the roof and told the children to get off, whereupon he took the bricks and cleared off the roof. He further testified that he had run children off several times before, and that the roof had not leaked prior to the described incident. He testified that the subsequent entrance of water through the roof was through the holes which were found on the side of the roof from which he had chased the children, and that the damaged goods were underneath the holes in the roof which were made by the rocks. He testified positively that the children were running all over the roof throwing rocks at each other. However, on cross-examination he testified he did not see the children throw rocks but could hear the rocks hitting the roof. Mr. Dave Azar, the plaintiffs' witness, testified that when he opened the warehouse for business on the morning after the last chasing of the children from the roof, he discovered that a quantity of tobacco, candy, and cigarettes stored in the left side of the building had been damaged by water leaking through the roof. He testified that the goods were damaged, that the candy was soggy, and the cigarettes were all damp, and that they turn yellow when damp.

The defendants' evidence consisted of the testimony of a contractor, a roofer, and two insurance adjusters, all of whom testified as to the condition of the roof. The contractor and one of the adjusters testified that the roof was worn out, buckled up, and that the repairs allegedly made by the insured after the event indicated that a long crack in the roof had been filled recently and that there was no evidence of any vandalism or windstorm damage. The other adjuster stated he saw no damage done by vandals.

Thus, a jury question was presented, and it appears that the jury could reasonably have concluded, as it did, that the acts of the children in throwing rocks on the roof could have produced the holes allowing the entrance of the water which damaged the claimants' goods.

Further, it seems clear to us that where children playing on a roof throw rocks either at each other or at the roof and cause injury to it, the damage is within the coverage of an insurance

policy insuring against vandalism and malicious mischief. See the case of Unkelsbee v. Homestead Fire Ins. Co. of Baltimore (1945) (Mun. Ct. App. D. C.) 41 A. 2d 168, 170, where the court held that the fact that a three-and-a-half-year-old child was too young to be capable of entertaining any criminal intent did not prevent his act causing damage to property from being vandalism. Where children engage in acts such as the record here discloses, there is a wilful or malicious destruction within the definition in these insuring agreements of vandalism and malicious mischief. The trial court did not err in overruling the motion for new trial on the general grounds or on ground 5.

■ Ground 4 of the amended motion presses earnestly that the court erred in failing to give the jury any measure of damages or rules for determining the claimants' loss or damage which they claimed to have been sustained under the policies of the insurers. This portion of the charge to the jury was, "If you find that there was liability, you determine the extent of it, and the sums which these plaintiffs should recover from both companies. You will have then established a figure." It is urged that the instruction did not give any method by which the jury could arrive at the damage. The policies sued upon contain the standard stipulation that the company's liability shall be restricted to the actual cash value but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after loss. However, the insurers did not offer any evidence as to repair or replacement cost, while the claimants' witness testified that he and an adjuster for the company went through the damaged goods and segregated them and took an inventory together, which was introduced into evidence, and the uncontroverted wholesale cost of the goods as shown by the inventory was testified to be $2,306.60. Testimony also appears that repairs were made to the roof in the amount of $140, which is the only evidence as to the cost of repairs in the record. In this state of the evidence the only verdict which the jury could reach after determining liability was for the cost of the goods, which would be at least their actual cash value, and for the amount of the repairs as shown. While the trial court's instruction on the measure of damages was erroneous in that it

did not define the liability in the terms of the policy, the error was harmless since the amount of the verdict was warranted under the evidence after the jury had determined that the company was liable for the loss. See *U.S. Fidelity &c. Co. v. Corbett,* 35 Ga. App. 606, 610 (134 S. E. 336), and *Wells v. Steinek,* 49 Ga. App. 482 (3) (176 S. E. 42). Where error is assigned, it must not only be shown that it was error, but that it was harmful. *Kendrick v. White,* 75 Ga. App. 307, 311 (43 S. E. 2d 285); and *Morrow v. Johnston,* 85 Ga. App. 261 (68 S. E. 2d 906). In the *Morrow* case the trial judge instructed the jury that market value was a measure of damage, and this where the proper measure of damage was replacement value. However, since the replacement value was shown by the evidence to be higher than the market value and higher than the verdict, the error was held not to be harmful. Under these authorities, coupled with the evidence here, the error in instruction as to the measure of damages was harmless.

■ Special ground 6 assigns error in that, as the defendant insurers here had reasonable grounds for defending the case, they did not defend in bad faith, which must be shown under *Code* § 56-706 in order for damages and attorney's fees to be allowable. Under the evidence revealed in the record we feel that the defendant had a reasonable defense and should not be held to be chargeable with bad faith. See *Security Ins. Co. v. Jackson,* 54 Ga. App. 131 (187 S. E. 234). There was here no frivolous or unfounded refusal in law, which numerous cases have held must be shown so as to justify an award for damages and attorney's fees. *Gulf Life Ins. Co. v. Moore,* 90 Ga. App. 791 (84 S. E. 2d 696). Accordingly, the awarding of damages and attorney's fees should be stricken from the judgment. *Continental Cas. Co. v. Owens,* 90 Ga. App. 200 (82 S. E. 2d 742).

■ The next contention is that the verdict against the General Accident Fire & Life Assurance Corp. in the amount of $1,737 was illegal and contrary to law because the plaintiff's proof of loss submitted to the company at first claimed $1,100, but was afterward amended to claim $1,223.33. It is noted that the petitions charge that the plaintiffs furnished the defendants with proof of loss according to the requirements of the policy and

have otherwise performed all the terms and conditions imposed on them by the policy. In another portion of each of the petitions there is charged an absolute refusal on the part of the defendants to pay the losses in any amount. The cases cited by the plaintiffs in error of *McLeod v. Travelers Ins. Co.*, 8 Ga. App. 765 (70 S. E. 157) and *Fidelity & Cas. Co. v. Gate City Nat. Bank*, 97 Ga. 634 (4) (25 S. E. 392, 33 L.R.A. 821, 54 Am. St. Rep. 440), do not apply, since those cases merely held that where the insured alleged compliance with all the requirements of the policy as to notice but instead proved a waiver of compliance with such notice, there was a variation between his proof and the case as laid and a nonsuit should have been granted. Here the plaintiff proved one such part of his case as laid, namely, the waiver part. Thus, "evidence to support one of these allegations would dispense with the necessity of proving the other." *Sovereign Camp Woodmen of the World v. Keen*, 16 Ga. App. 703, 704 (86 S. E. 88). The argument is made that the amount of the verdict which exceeds the amount claimed in the proof of loss is illegal and contrary to law. In support of this contention the defendants cite *Travelers Ins. Co. v. Thornton*, 119 Ga. 455 (46 S. E. 678), and *Firemen's Ins. Co. v. Oliver*, 53 Ga. App. 638 (186 S. E. 706). Neither of these cases is in point, however, for the reason that here the company had denied liability in any amount, which waives requirements of the policy as to notice and preliminary proof of loss. "An absolute refusal to pay shall waive a compliance with these preliminaries." *Code* § 56-831. See also *Hanover Fire Ins. Co. v. Scroggs*, 90 Ga. App. 539 (3), 547 (83 S. E. 2d 295). It is to be noted that the insured originally filed claims in equal amounts against the two insurers having the property coverage, apparently under the mistaken belief that the insurers were liable for the loss equally, whereas, under the terms of the policies, one of the insurers was liable for 71 percent of the loss and the other's liability was for 29 percent of the loss. However, the proofs of loss as filed with each company clearly stated the total amount of damage to the insured property. Further, each of the policies was issued by the same agent, who thus had notice attributable to the companies of the proportion of the loss which each was bound to pay. Obviously, the companies

could not have been misled by the proof of loss filed under the apparently erroneous belief of the insured that each had an equal liability.

We think that where, as here, the insurer has waived the requirements of proof of loss by denying any liability, the insured is not restricted in the subsequent litigation to the mere recovery of the amount claimed in the proof of loss. While this question has not before been passed upon by any appellate court of this State under the facts as here presented, the principle we adopt was stated in Mellen v. U. S. Health & Accident Ins. Co., 83 Vt. 242 (75 A. 273), which held, "Where an accident insurance company waived its right to have proofs of loss filed, plaintiff was not limited in his recovery to the period of disability shown by the proof he did file."

■ The remaining ground of the amended motions for new trial contends that the court erred in charging the jury in substance that the General Accident Fire & Life Assurance Corp.'s policy insured 71 percent of the loss and the Central Mutual Insurance Co.'s policy insured 29 percent of the loss, because the plaintiffs in their petition claim $718.83 from the Central Mutual Insurance Co. and $1,727.83 from the other company, plus penalties and attorney's fees, and, further, that the court did not inform the jury that it was at all times limited to the amounts claimed in the sworn proof of loss and that the jury could not find an amount in excess of the amount claimed in the proof of loss. By the ruling in division 4 of this opinion we have held that the jury was not limited to the amount claimed in the sworn proof of loss. Further, the General Accident Fire & Life Assurance Corp.'s policy covered $125,000 face amount and the Central Mutual Insurance Co.'s policy covered $52,000. Accordingly, their liability is respectively 71 percent and 29 percent of the loss because the apportionment clause of each policy provides that the company shall not be liable for a greater portion of any loss than the amount insured under the policy bears to all other insurance on the property. In view of these provisions, the court did not err in instructing the jury that the respective defendants insured 71 percent and 29 percent of the loss.

The judgments of the trial court overruling the motions for a

new trial are affirmed on the condition that the portion of each of the judgments allowing penalties and attorney's fees be stricken; otherwise the judgments are reversed.

*Judgments affirmed on condition. Felton, C. J., and Nichols, J., concur.*