43291. LIVADITIS v. AMERICAN CASUALTY COMPANY OF READING, PA.

ARGUED JANUARY 5, 1968—DECIDED FEBRUARY 9, 1968—
REHEARING DENIED FEBRUARY 23, 1968.

*Westmoreland, Hall & O'Brien, Frank B. Strickland,* for appellant.

*Smith, Cohen, Ringel, Kohler, Martin & Lowe, Scott Charlton,* for appellee.

DEEN, Judge. ■ This action was brought under a provision of the insurance policy: covering "Vandalism and malicious mischief, meaning only the wilful and malicious damage to or destruction of the property covered, but excluding as respects this peril loss if the described dwelling had been vacant beyond a period of 30 consecutive days immediately preceding the loss." The insurer contends that judgment in its favor was authorized under its defenses (a) that the damage was not vandalism within the legal meaning of the word, but only the result of an illegal business carried on by a tenant; (b) that there was not coverage under a policy provision covering the described building "occupied principally for dwelling purposes"; (c) that the building

was in any event vacant "beyond a period of 30 consecutive days immediately preceding the loss."

(a) " 'Vandalism' means the destruction of property generally. *General Accident &c. Corp. v. Azar*, 103 Ga. App. 215, 218-219 (119 SE2d 82)." *Bell v. Adams*, 111 Ga. App. 819, 822 (143 SE2d 413). It must also, of course, be wilful and malicious, meaning that the act must have been intentional or in such reckless and wanton disregard of the rights of others as to be the equivalent of intent. As to malice, this may be inferred from the act of destruction. *McClurg v. State*, 2 Ga. App. 624 (58 SE 1064). Legal malice "need not amount to ill will, hatred, or vindictiveness of purpose; it being sufficient if the defendant was guilty of wanton or even a conscious or intentional disregard of the rights of another." *Investment Securities Corp. v. Cole*, 57 Ga. App. 97, 102 (194 SE 411). It was held in *Landers v. Medford*, 108 Ga. App. 525 (133 SE2d 403) that it was an act of vandalism for a 14-year-old boy to take the automobile of another, drive it at a reckless rate of speed, and wreck it. To the same effect see *Unkelsbee v. Homestead Fire Ins. Co. of Baltimore*, 41 A2d 168. In *Lanza Enterprises, Inc. v. Continental Ins. Co.*, (La. App.) 142 S2d 580, the turning on of a water hose which damaged construction work was held vandalism and malicious mischief as against the contention that the act must be shown to be with specific intent to injure the property and motivated by actual malice. The court held: "It took a deliberate act to turn on the faucet, and under such circumstances the deliberately turning and leaving the water on full force (which would obviously cause damage) evidenced the deliberate intention to damage the building."

In the present case the tenant had been given permission to erect an addition to the house. He built a lean-to across the back in which the moonshine still was housed, then vented the contraption so that the smoke, fumes and vapor were pulled by a fan to the interior of the house. As a result of smoke and condensation the paint in the rooms peeled, plaster was loosened, rugs, drapes, and walls were stained, soiled, and covered with mold. The outside wall was charred by fire. The swimming pool adjacent to the house was used as a dump for old

mash, and was stained and broken. A finding is accordingly demanded that the damage was done intentionally and wantonly by persons using the house, and therefore a finding that the acts amounted to vandalism is demanded by the evidence.

(b) The policy covered "the building described, including additions in contact therewith, occupied principally for dwelling purposes." There is no dispute that the five-bedroom house was used and was rented as a dwelling; that during the various trips to the property by the insured, his attorney, and real estate salesmen between the end of September, 1964, and early January, 1965, there were evidences of persons living on the premises: a small girl five or six years old came out on one occasion and a woman in kimono and hair curlers on another; a car was parked beside the house; it was lit at night as a dwelling normally would be, and when entry was made in early February there were found a cot, some chairs, canned food, and fresh food in the ice box. At the time the policy was taken out the house was used for dwelling purposes, and a subsequent illegal use by a tenant unknown to the owner would not void the policy. See *Commercial Union Fire Ins. Co. v. Capouano*, 55 Ga. App. 566 (190 SE 815). In view of the evidences of occupancy found on the various visits, there was nothing to put the owner on notice that the building was not being used for dwelling purposes, if it was not, and a holding in favor of the defendant could not be predicated on this ground.

(c) "When the defendant insurance company relies for its defense upon an exclusion in the policy, the burden is upon the defendant to establish its defense." *American Fire &c. Co. v. Barfield*, 81 Ga. App. 887, 892 (60 SE2d 383). This policy covers acts of vandalism and malicious mischief, then specifically excludes those occurring in a building which has been vacant for 30 consecutive days immediately preceding the loss. There is no evidence at all that the building in question was vacant for 30 days prior to February 8, 1965, when it was broken into and searched by the owner. Accordingly, none of these defenses is supported by any evidence.

■ It is further contended that the action is not maintainable because the insured did not comply with the policy pro-

vision: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after *inception of the loss.*" Absent circumstances constituting waiver or estoppel, provisions creating a contractual statute of limitation are in general valid and binding. *General Ins. Co. of America v. Lee Chocolate Co.,* 97 Ga. App. 588 (103 SE2d 632). Circumstances, however, may render performance impossible. It was held in *Pilgrim Health &c. Ins. Co. v. Chism,* 49 Ga. App. 121 (2) (174 SE 212), an action on a life insurance policy where the insured's death was not discovered until after the time for bringing suit had passed, that if failure to discover the death was not due to any neglect on the part of the beneficiary, the action could be maintained even though the contractual limitation had passed. Following this case, in *Buffalo Ins. Co. v. Steinberg,* 105 Ga. App. 366 (1) (124 SE2d 681) it was held a jury question, where the insured could not be located and the stipulated time passed before suit was filed, whether efforts to find the insured and the subsequent appointment of a conservator were timely under the circumstances. These cases are not entirely in point here, because an action might have been filed by the insured after discovery of the loss and within 12 months of its inception. The burden was on the insured to show when the damage occurred. The proof was explicit that the house was in good condition when rented around the end of September, 1964, and all of the damage was done and was first discovered when it was re-entered February 8, 1965. All rents were promptly paid through January, 1965. The suit was filed November 30, 1965. Did the "inception of the loss" occur before or after November 30, 1964? It has been held that the date of loss, not the date of discovery of the loss, is the beginning point for the running of the limitation period, in an action dealing with a vandalism clause in an insurance policy. Sager Glove Corp. v. Aetna Ins. Co., 317 F2d 439. However where the entire premises are rented and there is no agreement to the contrary the landlord has no right to enter upon them, except by permission of the tenant. *Howell Gas*

*of Athens, Inc. v. Coile,* 112 Ga. App. 732, 739 (146 SE2d 145) and citations. Thus, plaintiff had no right to go on the premises, and certainly none to break into the house, both of which would have been necessary to discover the still, and on each occasion when the attempt was made he was prevented from getting out of his automobile by the menacing action of a large police dog. There is also a policy provision: "This insurance shall not be prejudiced by any act or neglect of any person other than the Named Insured when such act or neglect is not within the control of the Named Insured." There is no provision precluding recovery for acts of vandalism on the part of a tenant not discoverable by the landlord, and the landlord could not have discovered the condition of the premises before the end of January, 1965, without himself committing a trespass. He did, however, actually discover the damage on February 8, less than five months from the first date on which it could have been incurred if the inception of the loss occurred immediately upon the tenant's possession, which still left a period of 7 months during which this action could have been filed. The loss may thus have occurred before or after November 30, 1964, the date on which the contractual limitation attached, there being no evidence at all on this point. "Stipulations in a policy of insurance to the effect that no suit or action for the recovery of any claim by virtue of the policy should be sustainable in any court of law or equity unless such suit or action should be commenced within 12 months after loss of the property insured . . . [are] conditions precedent to a recovery on such policy." *Graham v. Niagara Fire Ins. Co.,* 106 Ga. 840 (32 SE 579). And in *Metcalf v. National Union Fire Ins. Co.,* 29 Ga. App. 590 (116 SE 324), where submission of a proof of loss within 60 days from the *date of loss* was a condition precedent, an action on a policy of insurance covering both fire and theft was subject to nonsuit where the proof showed only that the automobile was stolen on a day more than 60 days before the filing of proof of loss and, when recovered several days later (within the 60-day period) it had been destroyed by fire, but the proof failed to show whether the fire was within or prior to the limitation period.

Since there was ample time after the insured recovered the property to file this action and still be within the limitation period, and since he had the burden of proving that the action was filed within 12 months from the inception of loss and failed to do so, the judgment in favor of the defendant was proper.

*Judgment affirmed. Jordan, P. J., and Pannell, J., concur.*