2006-NMSC-004

127 P.3d 1111

Cary BATTISHILL, Plaintiff–Respondent,

v.

FARMERS ALLIANCE INSURANCE COMPANY, Defendant–Petitioner.

No. 28,812.

Supreme Court of New Mexico.

Jan. 9, 2006.

Atwood, Malone, Turner & Sabine, P.A., Cord D. Borner, Lee M. Rogers, Jr., Roswell, for Petitioner.

Templeman & Crutchfield, P.C., James E. Templeman, Lovington, for Respondent.

Montgomery & Andrews, P.A., Gary R. Kilpatric, Santa Fe, Meckler, Bugler & Tilson, L.L.P., Richard Hodyl, Jr., Chicago, IL, for Amicus Curiae Property Casualty Insurers Association of America.

## OPINION

MINZNER, Justice.

{1} Appellant Farmers Alliance Insurance Company appeals from the Court of Appeals' opinion reversing summary judgment in its favor on Appellee Cary Battishill's claim under a homeowner's policy. *See Battishill v. Farmers Alliance Ins. Co.,* 2004–NMCA–109, 136 N.M. 288, 97 P.3d 620. The question on appeal is whether the policy section covering all risks except "vandalism and malicious mischief" excluded acts of arson. The Court of Appeals held that the phrase "vandalism and malicious mischief" did not encompass acts of arson because both

terms were susceptible to different interpretations, *id.* ¶ 22, and because the structure of the policy, taken as a whole, supported an interpretation in favor of the insured. *Id.* ¶ 24.

{2} We conclude, contrary to the Court of Appeals, that the phrase "vandalism and malicious mischief," included acts of arson. The clarity of the exclusion in the all-risk section of the policy precludes an interpretation in favor of the insured.

## FACTS

{3} Battishill is the owner of a rental house that was insured under a homeowner's hybrid policy issued by Farmers Alliance. The hybrid policy provides "all-risk" coverage on the dwelling itself and "named peril" coverage on personal property. The all-risk coverage insures against all risks causing physical loss to the dwelling, unless specifically excluded. The named perils coverage insures for "direct physical loss to [personal] property" caused by specific perils including "fire or lightning" and "vandalism or malicious mischief."

{4} It is undisputed that Battishill's house was partially damaged by a fire on or about June 24, 2002. The house had been vacant for more than thirty consecutive days prior to the fire, and did not contain any of Battishill's personal property. After an investigation, it was determined that the fire was incendiary in nature. Battishill filed a claim under his homeowner's insurance policy. Farmers Alliance denied coverage based on an exclusion in the policy for loss caused by "[v]andalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss." *Id.* ¶ 4.

{5} The district court granted summary judgment in favor of Farmers Alliance, holding that the vacancy exclusion was unambiguous and excluded coverage. The Court of Appeals reversed the district court's decision and concluded that "a common and ordinary meaning of 'vandalism'" supports coverage, and therefore, "on a narrow construction of the exclusion" the insured was entitled to recover. *Id.* ¶ 25. In addition, the Court of Appeals held that the all-risk and named perils coverages were structurally similar

and that a reasonable insured "would read the policy as covering destruction by arson" even if the dwelling had been vacant for more than thirty consecutive days. *Id.*

## DISCUSSION

### A. Standard of Review and Burden of Proof

{6} We review both issues de novo. "The interpretation of an insurance contract is a matter of law about which the court has the final word." *Rummel v. Lexington Ins. Co.,* 1997–NMSC–041, ¶ 60, 123 N.M. 752, 945 P.2d 970. "[U]nder an all-risk policy, the insured must initially prove that the loss or damage was caused by some event or risk other than normal depreciation or inherent vice or defect." 1 ERIC MILLS HOLMES & MARK S. RHODES, HOLMES'S APPLEMAN ON INSURANCE, § 1.10, at 43 (2d ed.1996). In this case, it is undisputed that the damages were caused by arson; therefore, Battishill has met his burden. The burden then shifts to Farmers Alliance "to prove that the loss is not covered by evidence showing an exception, exclusion or other limitation applies." *Id.; see also id.* at 45 ("That the insurer has the burden of proof to prove no coverage under an all-risks policy is the American rule in all states, with the possible exception of Texas.").

### B. "Vandalism and Malicious Mischief" as Ambiguous Terms

{7} The insurance policy at issue did not define "vandalism and malicious mischief" and it failed to mention arson. These terms are essential in determining whether the exclusion was applicable in this case. If arson constitutes "vandalism and malicious mischief," then the exclusion precludes coverage because it is undisputed that the dwelling was vacant for more than thirty consecutive days.

{8} The Court of Appeals stated that "an insurance policy is not rendered ambiguous merely because a term is not defined; rather, the term must be interpreted in its usual, ordinary, and popular sense." *Battishill,* 2004–NMCA–109, ¶ 11, 136 N.M. 288, 97 P.3d 620. We agree and hold that the common and ordinary meaning of "vandalism," "malicious mischief," and "arson" may be ascertained from a dictionary. *See, e.g., Estes v. St. Paul Fire & Marine Ins. Co.,* 45 F.Supp.2d 1227, 1229 (D.Kan.1999) (relying on Webster's Third New International Dictionary's definitions of "vandalism" and "arson" to determine that "[a]rson of a private dwelling clearly is within the plain and ordinary meaning of vandalism").

{9} Webster's Third New International Dictionary defines "vandalism" as "willful or malicious destruction or defacement of things of beauty or of public or private property." WEBSTER'S THIRD NEW INT'L DICTIONARY 2532 (2002). It defines "malicious mischief" as "willful, wanton, or reckless damage or destruction of another's property." *Id.* at 1367. "Arson" is defined as "the willful and malicious burning of or attempt to burn any building, structure, or property of another (as a house, a church, or a boat) or of one's own usu[ally] with criminal or fraudulent intent." *Id.* at 122. Burning is a form of damage, destruction, or defacement. From these definitions, we conclude that arson is a form of "vandalism and malicious mischief." *See Am. Mut. Fire Ins. Co. v. Durrence,* 872 F.2d 378, 379 (11th Cir.1989) (per curiam) ("[A] common sense interpretation of the insurance contract's 'Vandalism or Malicious Mischief' provision which contains the 'vacancy' exclusion, suggests that it would apply to a fire set in a vacant house by an unknown arsonist or vandal."); *Costabile v. Metro. Prop. & Cas. Ins. Co.,* 193 F.Supp.2d 465, 478 (D.Conn.2002) (predicting "that the Connecticut Supreme Court would conclude that arson . . . is a type of vandalism"); *United Capital Corp. v. Travelers Indem. Co. of Illinois,* 237 F.Supp.2d 270, 274 (E.D.N.Y.2002) ("Although there is somewhat conflicting case law on the issue, courts generally agree that the ordinary use of the word vandalism would include an arson."); *Brinker v. Guiffrida,* 629 F.Supp. 130, 136 (E.D.Pa.1985) ("Willfully and intentionally damaging a dwelling by setting it on fire is certainly damaging the dwelling by vandalism and malicious mischief, as well as arson.").

{10} Although the Court of Appeals recognized that arson may be considered a type of vandalism, it also reasoned that "apart from the dictionary, there exists a sense that the common and ordinary meaning of vandalism is something different than that of arson." *Battishill*, 2004–NMCA–109, ¶ 13, 136 N.M. 288, 97 P.3d 620; *see also id.* ¶ 17 ("While vandalism can also be read to generally and broadly mean willful or malicious destruction of a dwelling, its common and ordinary meaning is not necessarily or only defined that way."). The Court of Appeals noted that " 'arson' " and " 'vandalism' " have been described as " 'distinct perils' " in the general view of " 'ordinary business people.' " *Id.* ¶ 13 (quoting *MDW Enter., Inc. v. CNA Ins. Co.*, 4 A.D.3d 338, 772 N.Y.S.2d 79, 83 (2004)). We believe that it may be necessary to look beyond the dictionary definition to ascertain the common and ordinary meaning of a word or words in some cases; however, in this case, the dictionary provides appropriate common and ordinary definitions of "vandalism," "malicious mischief," and "arson."

{11} We are not persuaded a historical examination of the term "vandalism" is appropriate. The common and ordinary meaning of an undefined term should be based upon contemporary usage, where possible, because the issue is how a reasonable insured would understand the term at the time of purchase. *See, e.g., Gen. Accident Fire & Life Assurance Corp. v. Azar*, 103 Ga.App. 215, 119 S.E.2d 82, 85 (1961) ("Certainly it does not seem logical that the classic definition was intended by either the insurer or the insured in this case . . . ."). We agree with Farmers Alliance, who argued that "the ancient connotations of 'vandalism' have given way, in modern usage of the term, to a very broad meaning of the word that includes the destruction of property generally."

{12} Even if historically the term vandalism was limited to "behavior primarily directed at property having artistic, historical, architectural, literary, musical, personal or emotional significance or value" and to "damage that is not devastating," *Battishill*, 2004–NMCA–109, ¶¶ 17, 21, 136 N.M. 288, 97 P.3d 620, in contemporary usage, the terms vandalism and malicious mischief are not so limited. *See, e.g., Gen. Accident Fire & Life Assurance Corp.*, 119 S.E.2d at 84–85 ("[I]n ordinary usage [vandalism] is not limited to destruction of works of art, but has been broadened in its meaning to include the destruction of property generally."). Both definitions specify certain states of mind (willful, malicious, wanton, or reckless) and address certain types of results (destruction, defacement, or damage) to property, while neither definition limits the types of property or extent of damage.

{13} The Court of Appeals rejected contemporary usage because it did not believe that this usage was "correct in the context of dwelling insurance, purchased to insure against the dreaded risk of fire." *Battishill*, 2004–NMCA–109, ¶ 14, 136 N.M. 288, 97 P.3d 620; *see also id.* ¶ 21 ("[T]o a reasonable insured, the desire to have fire coverage, unquestionably extremely important for an insured, predominates."). We acknowledge that an insured's purposes in purchasing insurance are important considerations. Our interpretation of language within an insurance policy, however, is not based on a subjective view of coverage, but rather "our focus must be upon the objective expectations the language of the policy would create in the mind of a hypothetical reasonable insured who, we assume, will have limited knowledge of insurance law." *Computer Corner, Inc. v. Fireman's Fund Ins. Co.*, 2002–NMCA–054, ¶ 7, 132 N.M. 264, 46 P.3d 1264. When the terms used have a common and ordinary meaning, that meaning controls in determining the intent of the parties. We believe that contemporary usage provides the common and ordinary meaning that is appropriate on these facts.

{14} The common and ordinary meaning of the terms used in the all-risk coverage section results in broad coverage and a narrow exclusion. This section covers fire, including arson, as a form of direct physical loss to the dwelling, unless an enumerated exclusion is applicable. The exclusionary clause precludes coverage when the loss was caused by "[v]andalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before

the loss." *Battishill*, 2004–NMCA–109, ¶ 4, 136 N.M. 288, 97 P.3d 620. We have concluded that arson is a type of vandalism and malicious mischief. Moreover, the vacancy requirement was met. Consequently the exclusionary clause applies and precludes coverage. We next address the Court of Appeals' conclusion that when the policy is read as a whole, structural similarities between the all-risk and named perils coverage support a different interpretation.

## C. Ambiguity Within the Policy as a Whole

{15} Battishill argues that the policy read in its entirety is ambiguous, requiring an interpretation in his favor. Although the Court of Appeals recognized that "[t]he all-risk and named-perils personal property coverages are clearly separate coverages with likely different underwriting analysis based on different risks," *Battishill*, 2004–NMCA–109, ¶ 23, 136 N.M. 288, 97 P.3d 620, it ultimately agreed with Battishill's contentions. The Court of Appeals identified structural similarities that supported construing the policy in his favor.

{16} We agree with the Court of Appeals that the two coverages are separate and distinct; however, we disagree with the Court's analysis of the structural similarities. It is not necessary to read the coverages together to construe the all-risk dwelling exclusion at issue, because the exclusion read alone is clear and unambiguous. *See Costabile*, 193 F.Supp.2d at 476–78 (holding the language providing all-risk coverage was unambiguous, while the language providing coverage against named perils was ambiguous). *But see United Capital Corp.*, 237 F.Supp.2d at 274–76 (recognizing that the ordinary use of the word vandalism would include an arson, the Court nevertheless concluded that the policy as a whole was ambiguous because fire and vandalism were listed separately in another section of the policy). Unless it is necessary to read the coverages together, we believe there is a risk of creating, rather than identifying, ambiguity.

{17} We recognize that it is the law in New Mexico that "an insurance policy which may reasonably be construed in more than one way should be construed liberally in favor of the insured." *Erwin v. United Benefit Life Ins. Co.*, 70 N.M. 138, 144, 371 P.2d 791, 794–95 (1962). However, that rule "applies only where the language in the policy is ambiguous." *Safeco Ins. Co. of Am. v. McKenna*, 90 N.M. 516, 520, 565 P.2d 1033, 1037 (1977). "Resort will not be made to a strained construction for the purpose of creating an ambiguity when no ambiguity in fact exists." *Id.* In this case, the language in the exclusion is clear and unambiguous. We only look to other sections in a policy for clarification, not in an attempt to create an ambiguity where none exists. *See, e.g., Rummel*, 1997–NMSC–041, ¶ 20, 123 N.M. 752, 945 P.2d 970 ("If any provisions appear questionable or ambiguous, we will first look to whether their meaning and intent is explained by other parts of the policy."). An "ambiguity does not exist simply because a controversy exists between the parties, each favoring an interpretation contrary to the other." 2 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 21:11 (3d ed.2005).

{18} Our cases provide some guidance in determining whether an ambiguity exists, but they do not support a conclusion of ambiguity in this case. "Ambiguities arise when separate sections of a policy appear to conflict with one another, when the language of a provision is susceptible to more than one meaning, when the structure of the contract is illogical, or when a particular matter of coverage is not explicitly addressed by the policy." *Rummel*, 1997–NMSC–041, ¶ 19, 123 N.M. 752, 945 P.2d 970. In this case, separate sections of the policy do not conflict with one another because the all-risk dwelling coverage and the named-perils coverage are separate and distinct coverages, each providing separate coverage for different risks to different property under different terms. "Vandalism" and "malicious mischief" have a common and ordinary meaning in contemporary usage. Both terms, by their definitions, include arson. The structure of the contract appears logical; the two sections can be read independently and provide a sensible result. Finally, although arson is not explicitly addressed by the policy,

arson is included within various terms used in the policy. For example, arson is included within the terms "fire," "vandalism," and "malicious mischief."

{19} For purposes of the all-risk coverage, fire, vandalism, and malicious mischief are included, unless an exclusion applies. We recognize that arson can be viewed as a type of fire, and arson can be viewed as a form of vandalism and malicious mischief. However, the fact that there is an overlap within the named perils section does not create an ambiguity within the all-risk section. *See Costabile*, 193 F.Supp.2d at 476; *cf. United Capital Corp.*, 237 F.Supp.2d at 277 (distinguishing *Costabile* on the basis that "the structure of the policy ... provides no basis for limiting the ambiguity to only one type of coverage"). Fire, vandalism, and malicious mischief are not covered by the all-risk dwelling coverage as enumerated risks. Rather, it can be inferred that fire, vandalism, and malicious mischief are covered, unless they fit within an explicit exception. Therefore, even though arson is a form of fire, to which no exception applies, it is encompassed within the definitions of vandalism and malicious mischief, to which an exception does apply.

{20} The exclusion within the all-risks section is clear and unambiguous, and it should be applied as written. *See Costabile*, 193 F.Supp.2d at 478 ("The language of the policy in Coverages A and B is not ambiguous: the willful destruction of property is not covered if the building has been vacant or unoccupied for thirty consecutive days."); *see also* COUCH 3d § 21:11 ("[I]t is a well settled rule that the question of construction can only arise where the language of a policy is susceptible to more than one meaning, and that clear and unambiguous clauses must be accepted as the expression of the intent of the parties, and enforced by the courts as written."). We conclude that the policy read as a whole provides no basis for interpreting the exclusion in favor of Battishill.

## CONCLUSION

{21} We reverse the Court of Appeals' conclusion that the common and ordinary meaning of "vandalism and malicious mischief" does not include "arson." We also reverse the Court of Appeals' holding that taken as a whole, the homeowner's insurance policy supports a construction in favor of Battishill. We conclude that the exclusion precluded coverage, and we affirm the district court's grant of summary judgment.

{22} IT IS SO ORDERED.

BOSSON, Chief Justice, SERNA, MAES and CHÁVEZ, Justices, concur.