# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:  December 16, 2015

**NO. 33,593**

**HEALTHSOUTH REHABILITATION HOSPITAL
OF NEW MEXICO, LTD., d/b/a HEALTHSOUTH
REHABILITATION HOSPITAL,**

  Plaintiff,

v.

**TERRY A. BRAWLEY, individually, and TERRY A.
BRAWLEY as personal representative of the Estate
of JOYE BRAWLEY, deceased,**

  Defendants/Third-Party Plaintiffs/Appellants,

and

**THE BOARD OF REGENTS OF NEW MEXICO
INSTITUTE OF MINING AND TECHNOLOGY,**

  Third-Party Defendant/Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Alan M. Malott, District Judge**

Steven J. Vogel
Corrales, NM

Janice K. Woods
Socorro, NM

for Defendants/Third-Party Plaintiffs/Appellants

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Jocelyn Drennan
Edward Ricco
Albuquerque, NM

for Third-Party Defendant/Appellee

**OPINION**

**BUSTAMANTE, Judge.**

{1}     Third-Party Plaintiff Terry A. Brawley was severely injured in an accident while riding his all-terrain vehicle. He sought coverage under a health plan provided by his wife's employer, New Mexico Institute of Mining and Technology (NM Tech). NM Tech denied Brawley's claims on the ground that Brawley's injuries were sustained while Brawley was under the influence of alcohol and hence his injuries were excluded from coverage under the terms of the health plan. After a bench trial, the district court found that NM Tech had breached its statutory duty to properly investigate the claims, but also found that Brawley's injuries were not covered by the health plan because Brawley was under the influence of alcohol at the time of the accident and that the influence of alcohol was "a cause" of the accident. Brawley appeals, arguing that the district court and NM Tech erred in relying on a certain blood alcohol content report and that his claims should be covered under the "concurrent cause" or "independent intervening cause" doctrines. We conclude that Brawley's evidentiary arguments do not present reversible error and that Brawley failed to preserve his arguments as to causation. We therefore affirm.

## BACKGROUND

{2}     On the evening of August 1, 2009, Brawley was drinking in the Mountain View Bar in Lemitar, New Mexico. One of the last to leave, Brawley told the bartender, "my ride is here" as he left the bar. This statement was consistent with Brawley's testimony, corroborated by other witnesses, that he customarily had friends or colleagues drive him home after he had been drinking. Later that night, Brawley was found unconscious near his all-terrain vehicle (ATV) on an unlighted road between the bar and his home. Brawley apparently had been thrown off the ATV when he encountered a "wash[]out" in the road measuring fifteen feet wide and five feet deep. He suffered extensive injuries, and after being treated for several hours at Socorro General Hospital, was airlifted to the University of New Mexico Hospital in Albuquerque, New Mexico. In total, Brawley was treated at four different hospitals over a period of approximately fourteen weeks. He incurred over $500,000 in charges for this care.

{3}     Brawley was provided medical benefits through his wife's employer, Defendant NM Tech. The self-funded Health Benefit Plan (the Plan) was administered for NM Tech by a third-party, HCH Administration (HCH), although NM Tech retained the right of final determination as to any claim made under the Plan and had the power to accept or reject HCH's recommendations. The Plan was

2

subject to the provisions of the New Mexico Insurance Code, NMSA 1978, §§ 59A-1-1 to -61-6 (1978, as amended through 2014). The Plan provides that

> no benefits are payable under [the] Plan for expenses incurred or in connection with . . . injury or sickness sustained . . . while under the influence of alcohol . . . [provided that] there is a direct relationship between [being under the influence of alcohol] and the sickness or injuries sustained.

This provision also states that "[f]or purposes of this section, a person shall be presumed to be under the influence of alcohol if his blood alcohol level equals or exceeds the limit for driving under the influence of alcohol as determined by the law of the state in which the [i]njury occurred."

{4} Based on this exclusion, called the "alcohol exclusion" by the parties, HCH denied the Brawleys' claims related to the accident. In its decision to deny the claims, HCH relied on "the police report and preliminary medical records only." Neither HCH nor NM Tech contacted Brawley or his wife (collectively, the Brawleys) or the investigating police officer or emergency medical personnel at the accident scene prior to denying the claims. No one from HCH or NM Tech went to the accident scene to investigate the accident. Finally, HCH and NM Tech did not interview the Mountain View Bar bartender or patrons of the bar, analyze the circumstances of the blood test upon which they relied to assure its reliability, talk with Brawley's medical care providers, or follow up on the issuance and later dismissal of the DWI citation

issued to Brawley after the accident. The district court found that these steps would have constituted a reasonable inquiry under the circumstances.

{5}     The present matter was initiated when HealthSouth Rehabilitation Hospital of New Mexico, Ltd., d/b/a HealthSouth Rehabilitation Hospital (HealthSouth), sued the Brawleys to recover the amount of their bills unpaid by NM Tech. The Brawleys filed an answer and third-party complaint naming HealthSouth and NM Tech as third-party defendants. The complaint alleged breach of contract, bad faith, violation of the Insurance Code, and violation of the Unfair Practices Act, NMSA 1978, §§ 57-12-1 to -26 (1967, as amended through 2009). The Brawleys also sought a declaratory judgment establishing that their claims are covered under the Plan.

{6}     HealthSouth was dismissed from suit based on a settlement agreement and the matter proceeded to a bench trial against NM Tech. At trial, the Brawleys tendered testimony by an accident reconstructionist who opined that the washout was the sole cause of the accident and an insurance expert who testified that NM Tech failed to properly investigate the accident and, more specifically, whether Brawley's alleged intoxication had a "direct relationship" to the accident. NM Tech presented testimony by its own insurance expert who testified that HCH and NM Tech properly denied the claims based on a medical report showing Brawleys' blood alcohol level and that no

further investigation was required. The parties stipulated that the amount remaining unpaid was $308,391.89.

{7}     The district court entered a number of findings of fact. First, it found that "[a] blood test performed some time after the crash, and after . . . Brawley had been hospitalized, indicated that he had a blood alcohol level nearly double the New Mexico threshold for a presumption of intoxication" and that "[t]his was confirmed by the testimony of [NM Tech's witness]." As to the alcohol exclusion, the district court found that, although the phrase "direct relationship" is not defined in the Plan, "[t]he parties have uniformly and consistently represented to the [c]ourt, and to each other, that the 'direct relationship' [required by the provision] is functionally the same as causation." The district court rejected the expert testimony to the effect that the washout was the sole cause of the accident and found that "Brawley's alcohol use on the night of [the accident] was *a cause* of the ATV crash in which he was injured, and which generated the medical bills at [the] root of this litigation." As discussed above, the district court found that neither HCH nor NM Tech undertook a reasonable investigation into the Brawleys' claims. It also found that the Brawleys "did not suffer any actual damages as a result of NM Tech's . . . lack of an appropriate thorough and complete investigation into the [accident] . . . prior to the denial of medical benefits at issue." *See* § 59A-16-30 (stating that a person "who has suffered

damages as a result of a violation of [the Insurance Code] by an insurer or agent is granted a right to bring an action in district court to recover actual damages"). The district court did not enter findings of fact specifically addressing the Brawleys' common law bad faith claim or request for punitive damages. The Brawleys make no argument on appeal as to the district court's failure to address their common law bad faith claim or their request for punitive damages under that claim.[1]

{8}     Based on its findings, the district court concluded that NM Tech "violated [t]he Insurance Code by failing to have a licensed adjustor[,] and by failing to adopt and implement a reasonable plan for the appropriate investigation of claims in general and as to the Brawley claims in specific." Second, the court concluded that "[n]otwithstanding [NM Tech's] violation of the Insurance Code," the denial of benefits to the Brawleys was appropriate because there was sufficient evidence that the accident bore a "direct relationship" to Brawley's "ingestion of alcohol" and was otherwise supported by sufficient evidence. The court entered judgment in favor of NM Tech.

---

[1]The Brawleys did not argue below nor do they argue on appeal that the exclusion at issue here is contrary to public policy. The district court noted that "[w]hile [it had]concerns about the enforceability of such broad exclusionary language, neither party has put the validity or enforceability of [the alcohol] exclusion before the [c]ourt in this matter and it is not, then, considered." Likewise, we do not consider the public policy implications of the alcohol exclusion.

**DISCUSSION**

{9}     On appeal, the Brawleys argue that the judgment must be reversed for two reasons. First, they argue that it was error for NM Tech and/or the district court to rely on an inadmissible document as evidence that Brawley was under the influence of alcohol and that, without this document, there was insufficient evidence that Brawley was under the influence of alcohol at the time of the accident. Second, they argue that, even if alcohol use and resultant impairment was a cause of the accident as the district court found, the district court erred in its application of the law of causation in insurance cases. We address each of the Brawleys' arguments in turn.

**A.     The District Court's Admission of Exhibit B is Not Reversible Error**

{10}     "We review the admission or exclusion of evidence for abuse of discretion." *Progressive Cas. Ins. Co. v. Vigil*, 2015-NMCA-031, ¶ 13, 345 P.3d 1096 (internal quotation marks and citation omitted), *cert. granted*, *Progressive v. Vigil*, 2015-NMCERT-003, 346 P.3d 1163. "[W]hen there is no evidence that necessary foundational requirements are met [for admission of evidence], an abuse of discretion occurs." *State v. Gardner*, 1998-NMCA-160, ¶ 5, 126 N.M. 125, 967 P.2d 465. The focus of the Brawleys' argument is a document showing Brawley's blood alcohol level (Exhibit B). Exhibit B was apparently generated by a medical care provider, not the state laboratory division. The Brawleys argue that Exhibit B should not have been

admitted at trial because NM Tech failed to provide a foundation for it and to show that the blood draw and test were consistent with the Implied Consent Act. *See* NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2015).

{11} NM Tech argues that the Brawleys' argument was not preserved either because they failed to timely object to testimony about Exhibit B or because the objections made at trial differ from the issue raised on appeal. We disagree. The Brawleys objected to admission of Exhibit B, first stating that Exhibit B was hearsay, then arguing that "there is no basis that can be established" and "[t]here is no medical doctor here that withdrew the blood [and t]here's no nurse that withdrew the blood." Furthermore, the Brawleys went on to argue that "under the Implied Consent Act, there are numerous provisions that must be followed in the extraction of blood. And so we cannot authenticate this document as to whether or not the blood was withdrawn pursuant to the Implied Consent Act." In addition to these statements at trial, the Brawleys requested a finding of fact invoking (although not naming) the Implied Consent Act and associated regulations. *See, e.g.*, § 66-8-109(A) (stating that blood samples may be taken only by authorized personnel); NMAC 7.33.2.15(A) (4/30/2010) (setting out the requirements for blood sample collection). They also requested a conclusion of law stating that "[t]he blood draw evidence is excluded for failure to meet statutory, foundational[,] and authenticity requirements." We conclude

8

that the Brawleys' arguments as to the foundational requirements for Exhibit B were adequately presented to the district court and were preserved for appeal.

{12}   However, the applicability of the alcohol exclusion does not depend on a certain blood alcohol level. Rather, the provision states that benefits are not payable for injuries sustained while "under the influence of alcohol." The provision's reference to state law as to the "legal limit" for driving under the influence merely describes a condition under which the insured may be *presumed* to be under the influence of alcohol. The next sentence of the provision further states that "a person may be considered to be under the influence of alcohol . . . if objective evidence suggests such condition[.]" Here, even if the district court's finding that Brawley's blood alcohol content was "nearly double the New Mexico threshold for a presumption of intoxication" was based on improperly admitted evidence, we conclude that other evidence supports the district court's implicit finding that Brawley was under the influence of alcohol at the time of the accident. *See Stephenson v. Dale Bellamah Land Co.*, 1969-NMSC-147, ¶ 7, 80 N.M. 732, 460 P.2d 807 ("We have held, and here reiterate, that error [in the admission of evidence], if it was error, will not be considered to require reversal unless no other admissible evidence substantially supporting the court's findings is present.")

9

{13} The district court found that Brawley was drinking in the Mountain View Bar the evening before the accident and "was one of the last persons to leave the bar." This finding is supported by testimony to the effect that Brawley arrived at the bar around 9 p.m. on August 1, 2009, and consumed "maybe four shots of Crown Royal[,]" and testimony that Brawley left the bar at about 10:15 p.m. One of the emergency medical personnel who attended Brawley at the accident scene stated that he suspected alcohol was involved because he smelled alcohol on Brawley's person. The Brawleys' accident reconstructionist testified that Brawley was not "in any shape to drive the [ATV]" and that Brawley was "above the .08 limit." Dr. Alois Treybal, who was admitted as an expert "in the context of family practice as applied to traumatic brain injury[,]" reviewed a medical record dated August 2, 2009, at 5 a.m. indicating that Brawley had a blood alcohol level of .26 and testified that this level "would be an intoxicating [level]." This medical record was admitted into evidence as well.

{14} Taken together, this evidence supports a reasonable inference that Brawley was under the influence of alcohol when he left the bar on his ATV and that consequently his driving ability was impaired. *See State v. Baldwin*, 2001-NMCA-063, ¶ 16, 130 N.M. 705, 30 P.3d 394 (stating that "human experience guides us in deciding whether . . . an accused likely had the ability to drive an automobile in a prudent manner

within a reasonable time before or after [he] is observed in a state of intoxication"); *Toynbee v. Mimbres Mem'l Nursing Home*, 1992-NMCA-057, ¶ 16, 114 N.M. 23, 833 P.2d 1204 ("On appeal, a reviewing court liberally construes findings of fact adopted by the fact finder in support of a judgment, and such findings are sufficient if a fair consideration of all of them taken together supports the judgment entered below.").

{15} The district court also found that "Brawley's alcohol use[2] . . . was *a cause* of the ATV crash in which he was injured[.]" This finding is a reasonable inference from the evidence as well. The accident reconstructionist agreed with NM Tech that alcohol use could "affect reaction and reflex time" and that "[p]ersons who are intoxicated have longer perception and reaction times." The accident reconstructionist also testified that any person, sober or not, would have had the accident. But the investigating officer testified that a neighbor, who knew Brawley had been drinking in the bar and who heard Brawley passing his house on the ATV, followed Brawley "to make sure that he will do all right . . . because he thought Mr. Brawley [was]

---

[2]The Brawleys argued at oral argument before this Court that the district court found only that Brawley had used alcohol and failed to find that he was "under the influence" of alcohol as the alcohol exclusion requires. Considering the findings together and in context, we conclude that the district court's findings indicate that it found that Brawley was "under the influence" of alcohol at the time of the accident.

11

intoxicated." This individual apparently did not have an accident at the washout. Finally, counsel for NM Tech and Brawleys' insurance expert had the following exchange on cross-examination:

> Q: [Y]ou concluded [on direct examination] with the statement . . . that, based on the washout alone, alcohol was not a cause of the accident.

> A: Well, if that's what I said, I didn't mean to. It's not the only cause of the accident.

{16} Considering this evidence in the light most favorable to the district court's decision, we conclude that it supports the district court's conclusion that "Brawley's injuries . . . bore a 'direct relationship' to his ingestion of alcohol at the Mountain View Bar prior to the ATV crash." *See Tartaglia v. Hodges*, 2000-NMCA-080, ¶ 27, 129 N.M. 497, 10 P.3d 176 (stating that, in reviewing the district court's findings after a bench trial, "we view the evidence in a light most favorable to the decision below, we resolve all conflicts in the evidence in favor of that decision and . . . disregard evidence to the contrary, we defer to the trial court in regard to the weighing of conflicting evidence, and we indulge every presumption to sustain the judgment of the trial court"). "There being substantial admissible evidence to support the court's findings, whether or not inadmissible evidence [e.g., Exhibit B] was admitted is not material[] and did not constitute reversible error." *Stephenson*, 1969-NMSC-147, ¶ 7.

**B. The Brawleys' Causation Theories Were Not Preserved for Appeal**

{17} "Every litigated case is tried at least three times: there is the trial the attorneys intended to conduct; there is the trial the attorneys actually conducted; and there is the trial that, after the verdict, the attorneys wished they had conducted." *Gracia v. Bittner*, 1995-NMCA-064, ¶ 1, 120 N.M. 191, 900 P.2d 351. On appeal, our review is limited to the case actually litigated below. *See In re T.B.*, 1996-NMCA-035, ¶ 13, 121 N.M. 465, 913 P.2d 272 ("[W]e review the case litigated below, not the case that is fleshed out for the first time on appeal."). This principle governs our analysis of the Brawleys' causation arguments.

{18} The district court found that the term "direct relationship" was not defined in the Plan and that the parties "represented to the [c]ourt, and to each other," that the meaning of "direct relationship" in the alcohol exclusion "is functionally the same as causation." It appears that the district court was referring to the definitions of causation in Uniform Jury Instructions 13-305 or 13-1709. UJI 13-305 NMRA states:

> An [act] [or] [omission] [or] [ _____ (*condition*)] is a "cause" of [injury] [harm] [_____ (*other*)] if[, unbroken by an independent intervening cause,] it contributes to bringing about the [injury] [harm] [_____ (*other*)] [, and if injury would not have occurred without it]. *It need not be the only explanation for the [injury] [harm] [_____ (other)], nor the reason that is nearest in time or place. It is sufficient if it occurs in combination with some other cause to produce the result.* To be a "cause", the [act] [or] [omission] [or] [_____ (*condition*)], nonetheless, must be reasonably connected as a significant link to the [injury] [harm].

13

(Fourth emphasis added.) UJI 13-1709 NMRA, being one part of the instructions addressing both common-law and statute-based unfair practices claims in insurance cases, states that "[a] cause of a loss is a factor [that] contributes to the loss and without which the loss would not have occurred. *It need not be the only cause.*" (Emphasis added.) The district court's holding that coverage was precluded because alcohol was "a cause" of the accident is consistent with these two tort-based definitions. No objections to this finding were filed in the district court. In addition, the parties did not dispute this finding in the appellate briefs or during oral argument before this Court.

{19}     There are two problems with this approach. To begin with, causation principles in tort law are different from causation principles in insurance law because "the two systems examine the causation question for fundamentally different purposes. In tort, it is to assess fault for wrongdoing. In insurance, it is to determine when the operative terms of a contractual bargain come into play." Erik S. Knutsen, *Confusion About Causation in Insurance: Solutions for Catastrophic Losses*, 61 Ala. L. Rev. 957, 968 (2010); Knutsen, *supra*, at 969-70 (stating that "[i]nsurance causation therefore bears little resemblance to the policy-laden proximate cause analysis of tort law"); *see also Standard Oil Co. of N.J. v. United States*, 340 U.S. 54, 66 (1950) (Frankfurter, J., dissenting) ("[T]he subtleties and sophistries of tort liability for negligence are not

to be applied in construing the covenants of [an insurance] policy."); *Allstate Ins. Co. v. Smiley*, 659 N.E.2d 1345, 1354 (Ill. App. Ct. 1995) (declining to follow a case because its holding "introduc[ed] . . . tort principles into the interpretation of an insurance policy"); Robert H. Jerry II, *Understanding Insurance Law*, 502 (2d ed. 1996) (stating that "many courts have explicitly stated that the proximate cause test is not the same in tort law and insurance law").

{20}     Moreover, by relying on tort-based definitions of causation, the parties and the district court essentially construed the phrase "direct relationship" in the way most favorable to the insurer, not the insured, contrary to the general rule that "an insurance policy which may reasonably be construed in more than one way should be construed liberally in favor of the insured." *Battishill v. Farmers All. Ins. Co.*, 2006-NMSC-004, ¶ 17, 139 N.M. 24, 127 P.3d 1111 (internal quotation marks and citation omitted). Indeed, it is not clear to us what the phrase "direct relationship" actually means in the context of the alcohol exclusion. Assuming that the "relationship" required is a causal one, does the phrase encompass *any* contributing cause of the injuries as the parties appear to have agreed and the district court found? Or does the word "direct" mean that the excluded cause must be the dominant cause or the immediate cause of the injuries? There are a myriad of cases defining the word "direct" in the context of insurance policy provisions—some equating it with

15

"proximate cause" and others stating that a "direct loss" is "more than proximate cause . . . [and] that the loss must flow immediately, either in time or space." 3 Allan D. Windt, Insurance Claims and Disputes § 11:22C n.3 (6th ed. 2015) (collecting cases).

{21} In spite of these problems with the district court's approach to causation in this context, our review does not depend on resolution of them because neither party identifies the district court's finding as error. *See State v. Joanna V.*, 2003-NMCA-100, ¶ 7, 134 N.M. 232, 75 P.3d 832 (stating that this Court's primary role is to correct trial court error, "not to arrive at a conclusion we believe would be just by deciding issues that were not raised below"). Instead, the Brawleys have accepted the district court's finding and argue only that the district court misconstrued its legal effect. Hence, we turn to that argument next.

{22} The Brawleys argue that, even if Brawley's alcohol use was "a cause" of the accident, the district court nonetheless erred in concluding that the alcohol exclusion precluded coverage. They posit two bases for this argument. First, they rely on the principle of "concurrent causation" to maintain that the claims should be covered. Generally, under the concurrent cause rule, "coverage should be permitted whenever two or more causes do appreciably contribute to the loss and at least one of the causes is a risk [that] is covered under the terms of the policy." Steven Plitt, et al., 7 *Couch*

16

*on Insurance 3d*, § 101:55, at 101-104 to 101-105 (Rev. ed. 2013). Second, they argue that the washout was an independent intervening cause of the accident, i.e., "the washout was an unforeseeable force of nature that intercepted and interrupted the normal progression of causation." *See* UJI 13-306 NMRA ("An independent intervening cause interrupts and turns aside a course of events and produces that which was not foreseeable as a result of an earlier act or omission."). They maintain that since the washout was an independent intervening cause of the accident, the claims should be covered.

{23}    But these arguments were not preserved for appeal. The only mention of the concurrent cause doctrine during the trial occurred in the testimony of the Brawleys' insurance expert, Professor Allen. On appeal, the Brawleys point to that testimony as evidence that the theory was raised. Assuming arguendo that an argument can be preserved solely through witness testimony, we conclude that Professor Allen's testimony was insufficient to "alert[] the district court as to which theories [the Brawleys were] relying on in support of [their] argument in order to allow the district court to make a ruling thereon." *State v. Janzen*, 2007-NMCA-134, ¶ 11, 142 N.M. 638, 168 P.3d 768; *State v. Miller*, 1997-NMCA-060, ¶ 8, 123 N.M. 507, 943 P.2d 541 (holding that an issue was not preserved where the state " 'elicited facts' supporting its theories" but did not "present[] any of [the related] legal principles or

arguments to the trial court"). Indeed, Professor Allen used the phrase "concurrent causation" only twice in his entire testimony. He stated, "This case involves what we call in the insurance industry concurrent causation; that is, there's a ditch, a washout. That's a potential cause of this injury or accident. And intoxication is a potential cause." Professor Allen went on, "So you got to figure out which one was it, or is it both, concurrent causation, and it's hard." Although Professor Allen elsewhere stated that the "direct relationship" clause in the alcohol exclusion "connotes causation" and that the alcohol use "has to make a contribution [to the accident,]" he never stated the concurrent causation rule in full. Indeed, he seemed to invoke several different causation theories when he stated, "So if you have two contributing causes, it just gets real complicated. One thing you could try to do is allocate between the two. That would be awfully hard. The other possibility is, if there are two, you could allocate it to either one, and you have to allocate it to the one that most favors the insured, because it's an exclusion, and you have to do that narrowly." *Cf.* Mark M. Bell, *A Concurrent Mess and A Call for Clarity in First-Party Property Insurance Coverage Analysis*, 18 Conn. Ins. L.J. 73, 75-76 (2012) (stating that courts have employed four different approaches to analyzing concurrent causes but "routinely refer to each approach as the 'concurrent cause doctrine' "). In addition, there were no opening or closing arguments, and the Brawleys never argued this theory to the district court.

Neither did the Brawleys request a finding or conclusion based on the concurrent causation doctrine. The district court thus was never apprised of the concurrent causation doctrine nor asked to rule on it. The Brawleys' concurrent causation argument was not preserved for appeal. *See Spectron Dev. Lab. v. Am. Hollow Boring Co.*, 1997-NMCA-025, ¶ 32, 123 N.M. 170, 936 P.2d 852 (noting that general principles of preservation prohibit the raising of new theories on appeal).

{24} Finally, the Brawleys argue that their independent intervening cause argument was preserved through testimony of their two experts, who testified that the washout was the cause of the accident. We do not agree because, like their concurrent causation argument, the Brawleys never elicited a ruling from the district court on this particular theory. They did not request a finding of fact or conclusion of law citing the independent intervening cause doctrine or the UJI defining it, and the phrase "independent intervening cause" was never mentioned at trial. *See* UJI 13-306. "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 (internal quotation marks and citation omitted). The Brawleys having failed to do so, we conclude that this argument also was not preserved for appeal.

**CONCLUSION**

{25}     We conclude that even if Exhibit B was improperly admitted at trial, the district court's findings were supported by sufficient other evidence. We also conclude that the Brawleys' arguments as to concurrent causation and independent intervening cause were not preserved and decline to address them. We affirm.

{26}     **IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**TIMOTHY L. GARCIA, Judge**

20