FILED
United States Court of Appeals
Tenth Circuit

May 5, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNION STANDARD INSURANCE
COMPANY, a foreign corporation,

      Plaintiff-Counter-
      Defendant-Appellant,

v.

HOBBS RENTAL CORPORATION,

      Defendant-Counter-
      Claimant-Appellee.

No. 07-2184

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. CIV-03-727-JCH/RHS)**

---

Scott P. Hatcher, Miller Stratvert P.A., Santa Fe, New Mexico for Appellant.

Gregory L. Biehler, Beall & Biehler, Albuquerque, New Mexico for Appellee.

---

Before **BRISCOE**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

     Union Standard Insurance Company brought this declaratory judgment

action seeking determination that it had no duty to defend or indemnify its

insured, Hobbs Rental Corporation (HRC), against a claim pending in New

Mexico state court. The claim arose from an accident on HRC's premises involving a vehicle owned and operated by an independent contractor hauling equipment. The question presented here is whether the business automobile policy Union Standard issued to HRC extends coverage to the independent contractor's vehicle.

The district court granted summary judgment in favor of HRC, finding coverage under the policy. In a subsequent ruling, the court held that Union Standard waived a separate argument that it had no duty to indemnify HRC. The court then entered a Rule 54(b) certification on the coverage issue.

We conclude the policy does not cover vehicles owned and operated by an independent contractor doing business with the insured. Exercising jurisdiction under 28 U.S.C. § 1291, we therefore REVERSE.

## I. Background

### A. The Accident and Insurance Policy

HRC is a New Mexico company that rents oil drilling equipment. HRC hired Nolan Brunson Incorporated (Brunson), an independent contractor specializing in moving heavy equipment, to transport a "mud separator" from an oil field to the HRC yard. While unloading the mud separator at HRC's yard, part of a Brunson truck touched an overhead power line, severely electrocuting a Brunson employee. The employee sued HRC in New Mexico state court for negligence. HRC placed its comprehensive general liability insurance

carrier—which covered claims for premises liability—on notice of the lawsuit, and it initially defended HRC.

As bad luck would have it, the carrier declared bankruptcy shortly after litigation began. As a fallback, HRC demanded defense and indemnification from its business automobile insurance carrier, Union Standard. Union Standard defended HRC in state court but reserved its right to dispute coverage, later filing this declaratory judgment action to ascertain its obligations and rights under the business auto policy.

The Union Standard business automobile policy provides coverage for certain "non-owned" autos, defined by the policy as

> [T]hose autos you do not own, lease, hire, rent or borrow that are used in connection with your business.

Appellant's App. at 70. To resolve the coverage issue, we must determine whether the Brunson truck was "used in connection with" HRC's business.

The parties agree Brunson was an independent contractor exercising nearly complete control over the transport job. Brunson was an entirely separate company from HRC, and in transporting the mud separator it used its own employees and truck, expecting and receiving neither assistance nor supervision from HRC. Brunson employees themselves were also charged with holding on-site safety meetings before every job to determine the method and manner by which they would offload equipment.

The only relevant factual dispute relates to whether an HRC employee directed Brunson to return the equipment to the location in the HRC yard where the accident occurred.

## B.  District Court Rulings

The district court made two relevant rulings.  First, it granted HRC summary judgment on the coverage issue.  The court reasoned that Brunson's transporting HRC equipment represented a task "core to HRC's business of leasing oil rig equipment," thereby establishing a "sufficient nexus" to constitute a use of the Brunson vehicle "in connection with [HRC's] business."  Appellant's App. at 576 (District Ct. Amended Order).

The second relevant ruling relates to a subsequent bench trial to resolve certain remaining issues.  In this ruling, the district court found that Union Standard had waived an indemnity argument by failing to include it in the pretrial order.

## II.  Analysis

Union Standard contends the district court erred in two ways: (1) by interpreting the "used in connection with" provision as extending coverage to the Brunson truck; and (2) by concluding Union Standard had waived its indemnity argument by failing to include it in the pretrial order.  Because we agree with Union Standard's first contention, we need not reach the second.

We review a district court's grant of summary judgment de novo, "applying the same standard as the district court." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1201 (10th Cir. 2007). A grant of summary judgment is proper only if the record shows "no genuine issue as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The parties agree that New Mexico law governs our analysis of the Union Standard policy, and we proceed from the same assumption. *See Grynberg v. Total, S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) (adopting parties' assumption of applicable law).

## A. Legal Framework

New Mexico courts have not yet specifically addressed the scope of a "used in connection with" provision in a business automobile policy. Our task is to "determine what decision the state court would make if faced with the same facts and issue." *Oliveros v. Mitchell*, 449 F.3d 1091, 1093 (10th Cir. 2006). We begin by briefly reviewing New Mexico case law outlining interpretation of insurance policy provisions.

First and fundamentally, a reviewing court must begin with the plain language of the insurance agreement itself. *Rummel v. Lexington Ins. Co.*, 945 P.2d 970, 976 (N.M. 1997). To the extent the language is not dispositive, we examine the contract terms in context and construe them in a reasonable and ordinary way. *See Mountain States Mut. Cas. Co. v. Ne. N.M. Fair Ass'n*, 508

P.2d 588, 591 (N.M. 1973). When evaluating competing interpretations of a policy, we must adopt the standpoint of a "hypothetical reasonable insured" and ask "what understanding a reasonably intelligent, non-lawyer lay person might glean from the policy, in light of the usual meaning of the words and the circumstances leading to purchase of the policy." *Berry v. Fed. Kemper Life Assurance Co.*, 99 P.3d 1166, 1183 (N.M. Ct. App. 2004). Finally, while we construe insurance contract ambiguities in favor of the insured, a favored interpretation cannot lead to strained interpretations of the policy language. *Battishill v. Farmers Alliance Ins. Co.*, 127 P.3d 1111, 1115 (N.M. 2006).

With these principles in mind, we turn to the Union Standard policy.

## B. The "In Connection With" Policy Language

Resolving the coverage issue requires defining the scope of the "in connection with" language in Union Standard's "non-owned autos" provision, which covers:

> [T]hose "autos" [HRC] do[es] not own, lease, hire, rent or borrow that are used in connection with [HRC's] business. This includes "autos" owned by [HRC] employees or partners or members of their households but only while used in [HRC] business or [HRC] personal affairs.

Appellant's App. at 70.

The parties do not contend the "own, lease, hire, rent, or borrow" language applies since such autos are covered by other provisions. This language thus excludes from the non-owned provision, for example, autos HRC rented or leased

from a dealer or rental agency, limousines for hire, or other vehicles that HRC might borrow to ferry employees on company business.  Given this exclusionary language, we turn to the non-owned autos *included* in the provision.

We begin with context.  While the policy does not formally define the "in connection with" language, the non-owned auto provision itself supplies the most obvious example of coverage in its second sentence: privately-owned vehicles driven by HRC employees (or members of their household) in the course of HRC business or HRC-related personal affairs.

This second sentence indicates that the provision is intended to cover a more narrow and foreseeable set of circumstances involving HRC employees or members of their household.  For example, an employee or family member's vehicle driven to a parts store on company business, or used to haul equipment for HRC, would be covered.  Viewing the "in connection with" language in the context of the entire provision thus suggests that instead of covering all autos somehow related to HRC's business, the policy is intended to apply to HRC-affiliated persons operating privately-owned vehicles while performing company-related work.  *See, e.g.*, *Bamber v. Lumbermens Mut. Cas. Co.*, 680 A.2d 901, 903 (Pa. Super. Ct. 1996) (an employee's personal vehicle is a non-owned auto used "in connection with [insured's] business" when used in the course and scope of employee's employment with the insured).

Presented with this language and context, HRC asks us to expand coverage to independent contractors who do business with it. We decline to do so for several reasons.

First, HRC exercised no control over Brunson in unloading the mud separator.[1] Neither HRC nor any of its employees operated the Brunson truck involved in the accident. Instead, only Brunson employees operated the trucks that Brunson owned. The accident occurred without direct HRC supervision, and occurred during a job Brunson had been retained to perform in the ordinary course of business. Brunson and its workers were neither employees, agents, nor joint venturers of HRC's. Even if an HRC employee told Brunson *where* to place the equipment, it would not vitiate Brunson's control over the details of the work. *See*, *e.g.*, *Adams v. Thomason*, 753 So. 2d 416, 420–21 (La. Ct. App. 2000) (finding that a vehicle is not a non-owned auto "used in connection with" an insured's business when the vehicle's operator was not the insured's employee and the insured lacked control over the vehicle).

---

[1] In its response brief, HRC argues Union Standard in part forfeited its argument regarding HRC's lack of control over Brunson because Union Standard failed to make the exact argument before the district court. Our review of the record, however, shows that Union Standard sufficiently raised this argument below. *See, e.g.*, Appellant's App. at 575 (District Ct. Amended Order) ("Union Standard maintains . . . [the] Brunson truck was not being used 'in connection with [HRC's] business' because Brunson was an *independent contractor* with *exclusive control over its employees and vehicle*." (emphasis added)); *see also* Appellant's App. at 212–15, 471–73.

Second, extending this policy language to independent contractors such as Brunson would conflict with New Mexico's "hypothetical reasonable insured" standard. Under this standard, we ask "what understanding a reasonably intelligent, non-lawyer lay person might glean from the policy, in light of the usual meaning of the words and the circumstances leading to purchase of the policy." *Berry*, 99 P.3d at 1183. A reasonable insured in this situation would consider several relevant facts in evaluating coverage, particularly Brunson's status as an independent contractor using its own employees and vehicle. A reasonable insured, moreover, would consider that Brunson did not expect HRC supervision of its employees and did not receive assistance from HRC in doing the job. Despite uncertainty about whether HRC instructed Brunson where exactly to return the mud separator, Brunson employees supervised the operation and exercised control of the truck at all times.

Based on these facts, a reasonable insured would not view HRC's business automobile policy as extending coverage to independent contractors over which HRC did not exercise control. Such a broad interpretation of the provision would extend coverage to all businesses HRC hired to transport its equipment. In our view, no reasonable insured party would understand non-owned policy language to apply to such circumstances.[2] Indeed, such a reading would result in precisely

---

[2] Neither apparently did HRC. It did not attempt to make a claim on the Union Standard business auto coverage until HRC's general liability insurance

(continued...)

the type of strained policy interpretation New Mexico law prohibits. *See*

*Battishill*, 127 P.3d at 1115.

Finally, our interpretation accords with the common purpose of non-owned

policy provisions. In the business context such provisions ordinarily "provide[]

employers with protection from liability based on the doctrine of respondeat

superior arising out of an employee's commission of a tort while using their own

personal vehicles in the employer's business." Lee R. Russ & Thomas F. Segalla,

8A Couch on Insurance § 118.41 (3d ed. 2008). While the use of personal

vehicles by employees acting on the company's behalf might be covered,

independent contractors are not.[3]

In sum, the "non-owned" auto provision does not provide coverage for

vehicles under the operation and control of third-party independent contractors.

## C. Sufficient Nexus Test

In granting summary judgment for HRC, the district court applied a

"sufficient nexus" test derived from an unpublished district court opinion, *North*

*River Insurance Co. v. American Home Insurance Co.*, No. 01-0231 (D.N.M. Nov.

22, 2002). Addressing the same language that exists in the Union Standard

policy, *North River* held that for a non-owned vehicle to be used "in connection

---

[2](...continued)
carrier went bankrupt.

[3] Note that at the time of the accident, the Brunson truck at issue was insured under Brunson's own business automobile policy.

with [an insured's] business," there must be a "sufficient nexus" between the insured party and the vehicle. *See id.* at 11. A sufficient nexus would exist where, for example, the parties had "a joint venture or enterprise," or the insured "had some legal responsibility for the use of" the vehicle. *Id.* An *in*sufficient nexus would exist where, for example, a private vehicle caused an accident while turning around in an insured's parking lot. *Id.* at 10.

As an initial matter, we note that certain factors from *North River* bolster our resolution of the coverage issue. For example, the relationship between HRC and Brunson cannot be described as a "joint venture or enterprise"—indeed, both parties agree no "joint venture or enterprise" existed. *See* Appellant's App. at 575–76. Nor did HRC have any "legal responsibility for the use of" Brunson's truck: HRC hired Brunson as an independent contractor to transport the mud separator on its own, using Brunson's own equipment and its own employees.

In deciding the Union Standard policy's coverage, the district court reasoned that Brunson's transportation of HRC equipment to the HRC yard was a task "core to HRC's business of leasing oil rig equipment," thereby establishing a "sufficient nexus" to constitute a use of the Brunson vehicle "in connection with [HRC's] business." Appellant's App. at 675 (District Ct. Amended Order). New Mexico courts have never applied such a nebulous distinction between independent contractors involved in "core" tasks and those who are not.

-11-

An example illustrates the problem with the sufficient nexus test as applied by the district court. Suppose that instead of renting drilling equipment, HRC's "core business" was marketing products via the Internet and shipping them from its warehouse. Applying the district court's "sufficient nexus" approach in this situation would render delivery trucks "covered autos" under the Union Standard business auto policy. After all, such vehicles would drive to the HRC warehouse daily to receive packages integral to HRC's "core" business. Should one of these vehicles strike a pedestrian while en route to HRC's office or in its parking lot, it would be a non-owned auto and the Union Standard policy would cover any resulting damages. Construing the business automobile policy provision in such a way would, in our view, impermissibly extend coverage to a vast universe of potential claimants.

In essence, the problem with a substantial nexus test is that it would resolve this coverage dispute by focusing on whether, for example, a contractor is supplying vital services to a business. In our view, for the reasons we have given here, New Mexico's "reasonable expectations of the insured" test is focused instead on the insured's control.

*                    *                    *

We conclude the Brunson truck involved in the accident was not "used in connection with" HRC's business and therefore not a "non-owned auto" under the Union Standard insurance policy.

**D.  Waiver of Indemnity**

Because we reverse on the coverage issue, we need not determine whether Union Standard waived its separate indemnity argument.

### III.  Conclusion

For the foregoing reasons, we find the Brunson truck was not "used in connection with" HRC's business for purposes of the Union Standard business auto policy.  We reverse and remand to the district court for further proceedings.