FILED
United States Court of Appeals
Tenth Circuit

August 19, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CAROLINA CASUALTY
INSURANCE COMPANY,

        Plaintiff - Counter-
        Defendant - Appellee,

    v.

NANODETEX CORPORATION;
ALAN P. SYLWESTER; ANGELO L.
SALAMONE,

        Defendant - Counter-
        Claimants - Appellants,

    v.

MONITOR LIABILITY MANAGERS,
INC.,

        Counter-Defendant -
        Appellee.

No. 12-2110

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 6:09-CV-01183-JCH-RHS)**

---

Maureen A. Sanders (Duff Westbrook with her on the briefs), Sanders &
Westbrook, P.C., Albuquerque, New Mexico, for Defendants - Counter-Claimants
- Appellants.

George J. Manos, Lewis, Brisbois, Bigaard & Smith, LLP, Chicago, Illinois,
(Jeffrey A. Goldwater, Darcy Ibach, Robert A. Chaney of Lewis, Brisbois,
Bigaard & Smith, LLP, and Michael T. Pottow of Catron, Catron & Pottow, P.A.,

Santa Fe, New Mexico, with him on the brief), for Plaintiff - Counter-Defendants - Appellees.

---

Before **HARTZ**, **MCKAY**, and **O'BRIEN**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

A few years ago the New Mexico Supreme Court recognized a new tort called "malicious abuse of process," which subsumed the traditional causes of action for malicious prosecution and abuse of process. Nanodetex Corporation and two of its principals (the Insureds) were successfully sued for malicious abuse of process. They then sought indemnification from Carolina Casualty Insurance Company, which covered the Insureds under a management liability policy (the Carolina Policy). Carolina denied the claim, relying on an exclusion in the policy for losses arising from claims for "malicious prosecution." It sought a declaratory judgment that it was not liable for the damages arising from the malicious-abuse-of-process judgment. On Carolina's motion for summary judgment, the district court agreed with Carolina and also rejected the Insureds' counterclaims. The Insureds appeal.

We reverse the declaratory judgment. We hold that the term *malicious prosecution* in the exclusion does not encompass all claims of malicious abuse of process, but only claims whose elements are essentially those of the common-law cause of action for malicious prosecution. Because the judgment against the

Insureds in the tort case was affirmed on appeal on a claim that was not substantially the same as common-law malicious prosecution, the exclusion in the Carolina Policy does not apply. We reverse the judgment below and remand for reconsideration in light of our ruling on coverage.

## I.    BACKGROUND

In 2005 Nanodetex sued Sandia Corporation over a dispute about licensing of what is called MicroChemLab technology. The day that Nanodetex announced the suit, it learned information suggesting that Defiant Technologies also had an arrangement with Sandia concerning the technology. Allan Schwartz, a Nanodetex shareholder who had also been one of the company's lawyers, telephoned one of Defiant's principals, Doug Adkins, to propose a merger between Nanodetex and Defiant. When this proposal was refused, Schwartz insinuated that the litigation would keep Defiant from exploiting the technology for years. Soon thereafter, Nanodetex added Defiant and three of its principals as defendants in the suit against Sandia. Citing the Schwartz conversation, Defiant asserted several state-law counterclaims against the Insureds. The counterclaims included malicious abuse of process and tortious interference with prospective business relationships. The Insureds asked Carolina to pay for defending these counterclaims. Carolina agreed to do so, but reserved its right to contest coverage at a later time.

After all other claims in the case had been either settled or disposed of through summary judgment, only Defiant's counterclaims remained for trial. The jury found for Defiant and awarded $1 million in compensatory damages on the malicious-abuse-of-process counterclaim; $1 in nominal damages on the tortious-interference counterclaim; and $1 million in punitive damages. The verdict form did not specify whether the punitive damages were awarded on the malicious-abuse counterclaim or the tortious-interference counterclaim. We affirmed on appeal. *See Nanodetex Corp. v. Defiant Techs.*, 349 F. App'x 312 (10th Cir. 2009)

Carolina filed this action in the United States District Court for the District of New Mexico in December 2009, invoking diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1). It sought a declaratory judgment that the Carolina Policy covered neither the compensatory damages on Defiant's malicious-abuse-of-process counterclaim nor the punitive damages. Carolina relied on Section IV.D.3 of the policy, which states:

> The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against any Insured:
>
> . . . .
>
> . . . for:
>
> . . . .
>
> . . . invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, *malicious prosecution*, libel, slander, mental anguish,

-4-

> humiliation, emotional distress, oral or written publication of
> defamatory or disparaging material . . . .

J. App., Vol. I at 44–45 (emphasis added).  In light of this provision, Carolina claimed that it had no duty to indemnify the Insureds for Defiant's judgment.  The Insureds counterclaimed against Carolina and Monitor Liability Managers, Inc. (the underwriting and claims manager for Carolina) for breach of the insurance contract and the covenant of good faith and fair dealing; breach of fiduciary duty; violation of the New Mexico Unfair Practices Act; and violation of the New Mexico Insurance Code.

Both sides moved for partial summary judgment on whether the Carolina Policy covered the $1 million compensatory-damages award for malicious abuse of process.  The district court ruled that the term *malicious prosecution* in Section IV.D.3 is ambiguous but that "the most reasonable interpretation . . . and the one most likely in line with the expectations of the parties" is that the term "includes claims brought for malicious abuse of process, and that such claims are therefore excluded from coverage."  *Id.* at 366 (Memorandum Opinion & Order at 12, *Carolina Cas. Ins. Co. v. Nanodetex Corp.*, Civ. No. 09-1183 JCH/RHS (D.N.M. July 27, 2011)) (Memorandum I).  Alternatively, the court ruled that Defiant's evidence could have satisfied the traditional elements of malicious prosecution in New Mexico in any event.  *See id.* at 366–68 (Memorandum I at

12–14). It awarded partial summary judgment to Carolina. *See id.* at 368 (Memorandum I at 14).

The district court later granted Carolina's motion for summary judgment on all remaining issues. *See id.*, Vol. II at 754 (Memorandum Opinion & Order at 19, *Carolina Cas. Ins. Co.*, Civ. No. 09-1183 JCH/RHS (D.N.M. July 2, 2012)) (Memorandum II). It ruled that the Carolina Policy did not cover the punitive damages because the evidence clearly indicated that they were awarded for malicious abuse of process rather than for tortious interference, and thus were excluded under Section IV.D.3. *See id.* at 748–50 (Memorandum II at 13–15). With respect to the Insureds' counterclaims, the court noted that each counterclaim rested on the same theory, bad-faith failure to settle, and it ruled that an insurer's liability for bad-faith failure to settle does not extend to any portion of a judgment arising from a claim that the insurance policy does not cover. *See id.* at 744–48 (Memorandum II at 9–13). And regardless, the court ruled, the Insureds had failed to show factual support for their allegations of bad faith. *See id.* at 753–54 (Memorandum II at 18–19). The court concluded that Carolina's liability was limited to the costs of defending the Defiant action plus the $1 in nominal damages on Defiant's tortious-interference counterclaim. *See id.* at 754 (Memorandum II at 19).

On appeal the Insureds argue (1) that the district court erred in ruling that the Carolina Policy did not cover the damages award for malicious abuse of

process; (2) that even if they are wrong on issue (1), the court erred in ruling that the punitive damages were awarded for malicious abuse of process rather than tortious interference and therefore were not covered; (3) that even if they are wrong on issue (1), the court erred in ruling that under New Mexico law an insurer's liability for bad-faith failure to settle cannot extend to judgments on noncovered claims; and (4) that the court erred in granting summary judgment on the counterclaims against Carolina for lack of evidence of bad faith, a ground not raised in Carolina's motion for summary judgment. We agree with the Insureds on the first issue, holding that the malicious-prosecution exclusion in the Carolina Policy did not apply to the malicious-abuse-of-process judgment against the Insureds. The second and third issues are therefore mooted. We also agree with the Insureds on the fourth issue. Accordingly, we reverse the judgment below and remand for further proceedings. We deny the Insureds' motion to certify certain issues to the New Mexico Supreme Court.

## II.    DISCUSSION

### A.    Standard of Review

"We review the district court's grant of summary judgment de novo, applying the same standards that the district court should have applied." *Sabourin v. Univ. of Utah*, 676 F.3d 950, 957 (10th Cir. 2012) (internal quotation marks omitted). "A grant of summary judgment is proper only if the record shows no genuine issue as to any material fact and the moving party is entitled to

judgment as a matter of law." *Union Standard Ins. Co. v. Hobbs Rental Corp.*, 566 F.3d 950, 952 (10th Cir. 2009) (internal quotation marks omitted); *see* Fed. R. Civ. P. 56(c). Because the parties agree that New Mexico law governs the construction of the Carolina Policy, our analysis of the policy will apply New Mexico law. *See Union Standard*, 566 F.3d at 952 (adopting the parties' shared view of the governing law).

## B. Coverage for Malicious Abuse of Process

We begin with the text of the Carolina Policy itself. The clause at issue is found in Part IV, which is titled "Exclusions." J. App., Vol. I at 44. Part IV provides that "[t]he Insurer shall not be liable to make any payment for Loss in connection with a Claim made against any Insured" arising from a number of specified circumstances. *Id.* Section D.3 lists the following claims among those excluded from coverage: "invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, *malicious prosecution*, libel, slander, mental anguish, humiliation, emotional distress, oral or written publication of defamatory or disparaging material." *Id.* at 45 (emphasis added). The policy's definitions section does not define these terms. Also worth noting is that the policy's coverage is not restricted to liability for conduct occurring in New Mexico; the "Coverage Territory" provision of the policy states that it "applies to a Wrongful Act . . . taking place anywhere in the world." *Id.* at 49. Nor does anything in the policy restrict coverage to suits in New Mexico courts. The policy contains no

-8-

choice-of-law provision, except to say that when certain conditions are met, coverage for noncompensatory damages will be determined under the law of the jurisdiction most favorable to coverage.

New Mexico law treats an insurance policy as an ordinary contract to be construed according to customary principles of contract interpretation. *See Rummel v. Lexington Ins. Co.*, 945 P.2d 970, 976 (N.M. 1997). Thus, a policy "must be construed as intended to be a complete and harmonious instrument designed to accomplish a reasonable end." *Safeco Ins. Co. of Am., Inc. v. McKenna*, 565 P.2d 1033, 1037 (N.M. 1977). When policy terms "have a common and ordinary meaning, that meaning controls in determining the intent of the parties." *United Nuclear Corp. v. Allstate Ins. Co.*, 285 P.3d 644, 647 (N.M. 2012) (internal quotation marks omitted). Although the focus should be on the expectations that the policy language would create in the mind of a reasonable insured who has only a "limited knowledge of insurance law," *Battishill v. Farmers Alliance Ins. Co.*, 127 P.3d 1111, 1114 (N.M. 2006) (internal quotation marks omitted), the meaning of legal terms of art that are not part of common speech is best determined by using legal sources, *see Hinkle v. State Farm Fire & Cas. Co.*, No. 31,707, slip op. at \*\*14–16 (N.M. Ct. App. June 3, 2013) (the terms *malicious prosecution* and *abuse of process*, when listed as covered claims in a liability policy, unambiguously conveyed their legal definitions); *cf. United Nuclear*, 285 P.3d at 650–52 (consulting Black's Law Dictionary as aid in

construing insurance policy).  After all, a reasonable insured who saw a clearly "legal" term in a policy would expect its meaning to be what lawyers make of it.

At the same time, however, clauses excluding coverage must be narrowly construed.  "If the insurer urges an exclusion to coverage that the policy does not clearly express, the courts will not write an exception into it by construction, for the purpose of exempting the insurer from liability."  *Rummel*, 945 P.2d at 982 (internal quotation marks omitted).

The term *malicious prosecution* in Section IV.D.3 of the Carolina Policy is obvious legal jargon, a term that would rarely be heard in everyday speech.  We therefore look to its meaning in legal sources.  That task is complicated, however, by the New Mexico Supreme Court's abandonment of the term eight years before the Carolina Policy became effective.  *See DeVaney v. Thriftway Mktg. Corp.*, 953 P.2d 277 (N.M. 1997), *overruled on other grounds by Durham v. Guest*, 204 P.3d 19, 26 (N.M. 2009).  The question addressed by the *DeVaney* court was whether the trial court had erred in granting summary judgment to the defendant on two separate claims under New Mexico law:  one for malicious prosecution and the other for abuse of process.  *See* 953 P.2d at 280–81.  The supreme court held that the two causes of action should be restated as a new tort that encompassed both. It began by reviewing the traditional elements of each claim.  Malicious prosecution, it explained, historically had consisted of "(1) the institution of civil proceedings by the defendant; (2) malice; (3) a lack of probable cause; (4)

termination of such proceedings in plaintiff's favor; and (5) damages." *Id.* at 282.

In contrast, abuse of process had consisted of "(1) the existence of an ulterior

motive; (2) an act using process other than that which would be proper in the

regular prosecution of the charge; and (3) damages." *Id.* at 281–82.

The court remarked that the two torts had "[s]teadily . . . become less

distinguishable," largely because of "a commonality in their purpose and their

elements." *Id.* at 282. In particular, it observed that "malicious prosecution

probably is better understood as a specific application of the more general tort of

abuse of process." *Id.* at 283. And it noted that recent developments had "further

obscured the differences between these two torts." *Id.* It concluded:

> Based on these similarities, we believe that there is no longer a
> principled reason for characterizing these two forms of misuse of
> process as separate causes of action. As a result, we conclude that
> these torts should be restated as a single cause of action, which shall
> be known as "malicious abuse of process," and which shall be
> defined by the following elements: (1) the initiation of judicial
> proceedings against the plaintiff by the defendant; (2) an act by the
> defendant in the use of process other than such as would be proper in
> the regular prosecution of the claim; (3) a primary motive by the
> defendant in misusing the process to accomplish an illegitimate end;
> and (4) damages. In short, there must be both a misuse of the power
> of the judiciary by a litigant and a malicious motive.

*Id.* (citations omitted).

*DeVaney* elaborated on the requirements for proving the new tort. It

explained that the second element, which it termed "misuse of process," could be

established through one of "two independent means." *Id.* at 285. The first would

be to show that the defendant had filed an action against the plaintiff without probable cause, historically an element of malicious prosecution. *See id.* at 285–86. The second means would be to show that the plaintiff had committed "some irregularity or impropriety suggesting extortion, delay, or harassment, conduct formerly actionable under the tort of abuse of process." *Id.* at 287. The court applied the label "[p]rocedural [i]mpropriety" to this second method of proof. *Id.* All the examples of procedural impropriety it cited came from authorities addressing abuse of process. *See id.* (citing *Simon v. Navon*, 71 F.3d 9, 15 (1st Cir. 1995); *Richardson v. Rutherford*, 787 P.2d 414, 421–22 (N.M. 1990); *Farmers Gin Co. v. Ward*, 389 P.2d 9, 11 (N.M. 1964); Restatement (Second) of Torts § 682 cmt. b (1977)). A later New Mexico Supreme Court decision reaffirmed that the two methods of proving misuse of process are disjunctive: a plaintiff need not satisfy both to prevail on a malicious-abuse-of-process claim. *See Fleetwood Retail Corp. of N.M. v. LeDoux*, 164 P.3d 31, 36 (N.M. 2007).

Not surprisingly, the parties have relied on *DeVaney* in offering diametrically opposed views of how to interpret the Carolina Policy's exclusion for claims of "malicious prosecution." J. App., Vol. I at 45. The Insureds argue that "malicious prosecution" in Section IV.D.3 cannot refer to a claim for malicious abuse of process because "New Mexico law recognizes significant and meaningful distinctions among *three different torts*: malicious prosecution, abuse

-12-

of process, and malicious abuse of process." Aplt. Br. at 16 (emphasis added). They point out that Section IV.D.3 lists 12 excluded claims, among which malicious prosecution appears but malicious abuse of process does not. Invoking the interpretative canon of *expressio unius est exclusio alterius*, they reason that the policy did not exclude coverage of Defiant's damages because malicious abuse of process is not listed as an excluded claim.

Carolina disagrees with the idea that malicious prosecution and malicious abuse of process can be understood as separate torts in New Mexico after *DeVaney*. Instead, it contends that "[u]nder New Mexico law as expressed in *DeVaney* and its progeny, there is *no distinction* between the terms 'malicious prosecution' and 'malicious abuse of process.'" Aplee. Br. at 21 (emphasis added). Thus, it argues, "[b]y including the term 'malicious prosecution' in [Section IV.D.3], Carolina has, in effect, also included the term 'malicious abuse of process' under New Mexico law." *Id.* at 21–22.

We disagree with both parties. Both go unreasonably far—in opposite directions— in applying the malicious-prosecution exclusion to the present context. Although it is clear that the common-law cause of action for malicious prosecution is encompassed by malicious abuse of process, *see Fleetwood*, 164 P.3d at 35 ("In *DeVaney*, we created the tort of malicious abuse of process by merging the formerly separate torts of malicious prosecution and abuse of process."), the Insureds think that because malicious prosecution and malicious

-13-

abuse of process are not identical, an exclusion for malicious prosecution has no effect in a jurisdiction that recognizes the broader tort. Carolina draws the contrary inference, suggesting that since malicious prosecution is a type of malicious abuse of process, an exclusion for the former has now expanded into an exclusion for the latter. Each approach exalts nomenclature over substance. If a jurisdiction were to decide to treat all common-law intentional torts under the rubric of "intentional infliction of harm," presumably the Insureds would argue that no exclusion for a common-law intentional tort would have any further effect in that jurisdiction; and presumably Carolina would argue that all intentional torts are excluded in that jurisdiction so long as at least one is listed in an exclusion provision. Neither argument gives a sensible meaning to the exclusion in the Carolina Policy.

It is worth keeping in mind that the Carolina Policy has a national scope. It covers wrongful acts and lawsuits throughout the United States (and perhaps beyond). If labels rather than substance were the governing interpretative principle, then the term *malicious prosecution* would have no application in those states that use a different term to describe essentially the same tort. *See, e.g.*, *Somers v. Chan*, 955 A.2d 667, 686–87 (Conn. App. Ct. 2008) ("vexatious litigation"); *One Thousand Fleet Ltd. P'ship v. Guerriero*, 694 A.2d 952, 955–56 (Md. 1997) ("malicious use of process"); *LoBiondo v. Schwartz*, 970 A.2d 1007, 1022–23 (N.J. 2009) ("malicious use of process"); *Gilbert v. Ince*, 981 P.2d 841,

845–46 (Utah 1999) ("wrongful use of civil proceedings"); Restatement (Second) of Torts § 674 (1977) ("wrongful civil proceedings"); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 120 (5th ed. 1984) ("Wrongful Civil Proceedings").

We think it clear that the term *malicious prosecution* in the Carolina Policy is a legal term of art that refers to a claim based on substantially the same elements as the traditional tort, regardless of the particular label under which the claim is pleaded. Such an interpretation works in a consistent manner in all jurisdictions in which the policy may operate and preserves the substance of the insurer/insured relationship without regard to semantic distinctions that have no relevance to the protection sought and offered through an insurance policy.

Accordingly, the Carolina Policy's exclusion for claims of malicious prosecution applies only to a claim that requires proof of essentially the elements required to prove common-law malicious prosecution. Those elements are well-understood. Black's Law Dictionary states them as "(1) the initiation or continuation of a lawsuit; (2) lack of probable cause; (3) malice; and (4) favorable termination of the lawsuit." Black's Law Dictionary 977 (8th ed. 2004). The Restatement defines *wrongful use of civil proceedings* as (1) "the initiation, continuation, or procurement of civil proceedings against another," (2) lack of probable cause, (3) a primary purpose "other than that of securing the proper adjudication of the claim in which the proceedings are based," and (4) termination

of the proceedings "in favor of the person against whom they are brought."

Restatement (Second) of Torts § 674.  And the description of malicious

prosecution in *DeVaney* is similar.  *See* 953 P.2d at 282.  If the judgment against

the Insureds on the malicious-abuse-of-process claim did not require proof of

essentially these elements, then the exclusion does not apply.

Determining the basis of an underlying claim for purposes of liability-

insurance coverage can be challenging.  Normally, when a liability insurer seeks

to show that all or part of the underlying judgment against the insured was based

on a noncovered claim, the analysis must focus on "the factual and legal grounds

on which the prior judgment was entered."  2 Allan D. Windt, Insurance Claims

and Disputes:  Representation of Insurance Companies and Insureds § 6:26, at

6-221 (5th ed. 2007).  The inquiry may be a matter of looking at the jury

instructions, *see, e.g.*, *Magnum Foods, Inc. v. Cont'l Cas. Co.*, 36 F.3d 1491,

1499 (10th Cir. 1994), or perhaps other materials such as pleadings, written

opinions, and trial transcripts, *see* 2 Windt, *supra*, § 6:26, at 6-222.

Here, however, our task is simple.  The matter is resolved by a prior

decision of this court in the underlying litigation.  When the Insureds appealed

the Defiant judgment, they challenged whether the evidence was sufficient to

satisfy the second element of malicious abuse of process—that is, misuse of

process.  *See Nanodetex Corp.*, 349 F. App'x at 317.  In an unpublished

disposition, we noted that misuse of process could be satisfied by proving either

-16-

that the Insureds had filed a complaint without probable cause or that they had committed some "irregularity or impropriety suggesting extortion, delay, or harassment." *Id.* (internal quotation marks omitted). After observing that Defiant had "proceeded on both of these misuse theories before the jury," *id.* at 317, we affirmed on the ground that the evidence had been sufficient to support the second theory, procedural impropriety, *see id.* at 318–19.[1] Thus, the only reason the Insureds had to pay the judgment against them is that we held that the judgment could be sustained by a jury finding that the second theory had been proved. Because proof of lack of probable cause—an essential element of malicious prosecution—was not necessary for our decision, the exclusion in the Carolina Policy does not apply.

To be sure, our prior decision did not rule out the possibility that the jury's verdict was also based on Nanodetex's claim that the complaint was filed without probable cause—a traditional malicious-prosecution claim. An award based on

---

[1] Carolina suggests that the opinion also addressed probable cause. It cites our statement that "Nanodetex did not take care with the allegations in its complaint, alleging that Defiant had entered into an agreement with Sandia concerning the commercial exploitation of MicroChemLab technology when it had not." *Nanodetex Corp. v. Defiant Techs.*, 349 F. App'x 312, 319 (10th Cir. 2009). But Carolina takes this statement out of context. We were discussing not whether Nanodetex had filed its complaint with probable cause, but whether its conduct amounted to a procedural impropriety. Indeed, our very next sentence was: "On this view of the facts, Nanodetex's actions reflect the sort of 'extortive' use of legal process proscribed in [New Mexico case law]—an illicit use of process not for its intended purpose, but as a means to secure an ulterior end." *Id.* Probable cause was never analyzed in our order and judgment.

such a claim would be excluded under the Carolina Policy. Ordinarily, when a damages award could be based on both a covered theory of liability and an excluded theory, the court must allocate the damages between the two theories (or rule against the party with the burden of persuasion on the issue when apportionment is impossible). *See* 2 Windt, *supra*, § 6:26, at 6-224 to -225; *id.* § 6:27, at 6-227 to -232. For example, in an action by a woman who, along with her husband, was a victim of an automobile accident, the extent of coverage may depend on how much of the general verdict for the woman was for wrongful death of her husband, how much for her personal injuries, and how much for property damage. *See Morris v. W. States Mut. Auto. Ins. Co.*, 268 F.2d 790 (7th Cir. 1959).

Such apportionment is not necessary or appropriate, however, in the circumstances of this case. Although there were two theories of liability, they were based on a single injury, the litigation against Defiant, and our prior decision affirmed the award of all the damages against the Insureds on the covered theory of this claim. Any damages awarded under an excluded malicious-prosecution theory of liability would therefore have to have been totally duplicative; it would have been for all or a part of the same damages. Because no element of the damages award could have been solely attributable to the excluded theory of liability, coverage must be extended to the full amount of the damages, and no burden of allocation exists. *See In re Feature Realty Litig.*,

-18-

634 F. Supp. 2d 1163, 1173 (E.D. Wash. 2007) ("As it has not been demonstrated that any element of damage is solely attributable to the non-covered cause of action, there is no reasonable basis for allocation."); *see also U.S. Steel Corp. v. Hartford Accident & Indem. Co.*, 511 F.2d 96, 99 (7th Cir. 1975) ("[W]here the facts are such that an insured's liability exists on one theory as well as another and one of them brings the liability within coverage, we think the insured may avail himself of the insurance protection." (footnote omitted)); *Aetna Cas. & Sur. Co. v. Lumbermens Mut. Cas. Co.*, 136 A.D.2d 246, 248 (N.Y. App. Div. 1988) (same).

We are confident that the New Mexico Supreme Court would adopt that same view. Accordingly, we hold that the district court should have awarded partial summary judgment to the Insureds on Carolina's claim that the policy excluded coverage of the malicious-abuse-of-process judgment.

## C.    Remaining Issues

The district court's grant of summary judgment to Carolina on the Insureds' counterclaims rested principally on the premise that the exclusion for claims of "malicious prosecution" in Section IV.D.3 barred coverage of the award against the Insureds on Defiant's malicious-abuse-of-process counterclaim. Because we hold that the award for malicious abuse of process was not an excluded loss, that ground for judgment cannot stand. As an alternative ground for judgment, however, the district court also ruled that the Insureds had failed to produce

-19-

evidence of Carolina's bad faith.  The Insureds contend that this ruling was improper because Carolina had not raised the issue in its summary-judgment pleadings so the Insureds had not had an opportunity to respond.  Carolina has not disputed that contention in its brief on appeal, and our review of the record confirms what the Insureds say.  Therefore, we must set aside the summary judgment against the Insureds on their counterclaims and remand for further proceedings.

## III.   CONCLUSION

We REVERSE summary judgment for Carolina on all claims and counterclaims, and we REMAND for further proceedings.  We DENY the Insureds' unelaborated request for attorney fees on appeal.  *See FDIC v. Daily*, 973 F.2d 1525, 1532 n.8 (10th Cir. 1992).  We DENY the Insureds' motion to certify questions of state law to the New Mexico Supreme Court.